**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**UNITED FURNACE CO., INC., f/k/a "United Foundry," Defendant–Appellee.**

**No. 887, Docket 88–9053.**

United States Court of Appeals, Second Circuit.

Argued March 17, 1989.

Decided May 31, 1989.

**294**

Mariann Sullivan, New York City (Harvey Barrison, Russotti & Barrison, New York City, of counsel), for plaintiff-appellant.

Edmund Maciorowski, Detroit, Mich. (Galvin Fox & Palmer, New York City, of counsel), for defendant-appellee.

Before MESKILL, MINER and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Leisure, J. The district court granted the Fed.R.Civ.P. 12(b)(6) motion of defendant-appellee United Furnace Co. (United) on the ground that the case was not yet ripe for review. The cross-motion of plaintiff-appellant American Motorists Insurance Co. (AMICO) for summary judgment, Fed.R.Civ.P. 56, was denied, and AMICO's complaint was dismissed without prejudice. AMICO appeals, arguing that the district court erred both in granting United's dismissal motion and in denying AMICO's summary judgment motion. We reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND

AMICO is incorporated under Illinois law and is licensed as a surety under New York law. AMICO maintains offices in New York City. United is a job shop and foundry, incorporated and located in Michigan.

In early 1986, United contracted with the Ford Motor Company to receive engine block castings from a Ford plant in Essexville, Ontario, machine the castings, melt down resulting waste and return the castings and waste back to the Ford plant in Ontario.

As items imported into the United States, these engine parts, unless exempted, would be subject to duty. See 19 U.S.C. § 1202, General Headnotes 1, 3 (1982 & Supp. IV 1986). The castings were eligible for exemption from duty under the regulations of the United States Customs Service (Customs), provided the castings remained in the United States for less than a year. See 19 C.F.R. § 10.31(a)(1) & n. 34 (1988) (quoting Schedule 8, Part 5C, Tariff Schedules of the United States). To secure such an exemption, United had to guarantee its compliance with the Customs regulations by providing a temporary importation bond on Customs Form 301, the conditions of which are set by regulation. See 19 C.F.R. § 10.31(f); 19 C.F.R. § 113.62 (1988), amended by 53 Fed.Reg. 45,901 (1988); see also 19 U.S.C. § 1623 (1982) (authorizing regulation of bond conditions).

On February 21, 1986, United's president, Edward Stroble, executed a bond, with United as principal, AMICO as surety and the United States as obligee. The bond was on a Customs Form 301, and specifically included the conditions set forth by 19 C.F.R. § 113.62. The bond was a continuous bond, "remain[ing] in force for one year beginning with the effective date and for each succeeding annual period, or until terminated." The effective date was March 11, 1986, and the limit of liability was set at $60,000.

Pursuant to what it claims is its general business practice, AMICO insisted, as a condition of its acting as United's surety on the bond, that United execute an independent indemnity agreement. Such an agree-

ment was signed by Stroble for United on the same day the bond was executed, February 21, 1986. The indemnity agreement stated that United, as Indemnitor, undertook the specified obligations "in consideration of the execution by [AMICO] of a bond, or the continuation of any previously executed bond, o[r] the substitution or renewal on any and all bonds, in which the Obligee is THE UNITED STATES OF AMERICA." Paragraph One of the agreement concerned United's payment of a premium for AMICO's suretyship and is not relevant here. In Paragraph Two, however, United undertook and agreed

> [t]o indemnify and save harmless [AMICO] from and against any and all liability, claim, demand, loss, damage; expense, cost and attorneys' fees which it shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, and to place [AMICO] in funds to meet all its liability under any bond, promptly upon request and before [AMICO] may be required to make any payment; and the voucher or other evidence of payment or of the fact and amount of [United's] liability to [AMICO] under this agreement shall be prima facie evidence of the fact and amount of [United's] liability to [AMICO] under this agreement. Any demand upon [AMICO] by the [United States] shall be sufficient to conclude that a liability exists and [United] shall then place [AMICO] with sufficient funds as collateral security to cover the liability.

The agreement specified that it was to be "deemed made in the State of New York," and that the rights and liabilities of the parties were to be determined in accordance with New York law. Additionally, United specifically consented to the personal jurisdiction of local, state and federal courts located in New York as the exclusive forums for litigating disputes arising from the agreement.

Between February and June 1986, Customs released to United perhaps a hundred or more shipments delivered in accordance with the Ford contract. United insists that these shipments were usually exported back to Ontario within days of their receipt.

In an April 23, 1987 letter, United's secretary, Marjola Malinowski, informed the Detroit District Director of Customs that as of that date United had received from Customs thirty demands for payment, totalling $196,721.05, for liquidated damages based on Customs violations for failure to export the engine parts back to Ontario within the temporary importation period. Malinowski insisted that United had shipped the engine parts back to Ontario promptly, in most cases one day after receipt, but in each instance by the end of June 1986 at the latest. She explained that United's Customs paperwork was handled by A.F. Burstrom & Son (Burstrom), and that, upon receiving Customs' demands for payment, she had immediately contacted Burstrom only to learn that the relevant paperwork had never been processed because Burstrom had declared bankruptcy, and all the necessary books and records had been confiscated by Customs.

On May 28, 1987, Malinowski updated her earlier letter, submitting a list of twenty-nine more case numbers, presumably corresponding to twenty-nine more demands for liquidated damages that United had received from Customs. She requested that these case numbers be "add[ed] . . . to the original petition of April 23, 1987."

On July 29 and 31 and August 3, 1987, Customs issued to United at least thirty-eight more demands for liquidated damages. AMICO claims that it too received copies of these demands. The demands each appeared on a Customs Form 5955A, a document entitled "NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED AND DEMAND FOR PAYMENT."[1] All the forms cited United's "FAILURE TO EXPORT [ENGINE PARTS] WITHIN THE BOND PERIOD,

---

1. The fifty-nine previous demands made by Customs against United, referred to in the April 23 and May 28 letters of Malinowski, do not appear in the record. Presumably, they each also appeared on a Customs Form 5955A.

OR ANY LAWFUL EXTENSION THERE-OF." Specifically, the forms indicated "TEMPORARY IMPORTATION BOND ENTRY DATE[S]" in May and June 1986, with the "BOND EXPIRATION DATE[S]" exactly one year later, in May and June 1987. United was cited for violations of 19 C.F.R. § 10.39(d)(1) (1988), and, accordingly, liquidated damages were demanded in the amount of twice the duty owed. *See* 19 C.F.R. § 10.39(d)(1). The thirty-eight forms that appear in the record demanded total liquidated damages of $203,563.15, although AMICO's complaint alleges that the demands totalled $242,522.25. All the forms identified AMICO as the surety on the temporary importation bond breached.

The thirty-eight notices and demands also stated:

> If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation.... Unless the amount herein demanded is paid or a petition for relief is filed with the district director of customs within the indicated time limit, further action will be taken in connection with your bond or the matter will be referred to the United States Attorney.

The "TIME LIMIT FOR PAYMENT OR FILING PETITION FOR RELIEF" was specified as thirty days from the dates of the notices.

In a letter dated August 6, 1987, Malinowski again supplemented her April 23 letter with another list of case numbers. She stated "I beli[e]ve that these are the last of the case numbers to be added to the petition of April 23,[ ]1987." She listed forty-five new case numbers, and these included the thirty-eight demands issued on July 29 and 31 and August 3 that appear in the record.

In a letter of February 11, 1988, Malinowski informed Customs that counsel for AMICO was seeking to collect $60,000 from United. The letter stated that AMICO had paid this amount to Customs in response to the demands for liquidated damages. Malinowski repeated that there had been no Customs violations, and she recounted her earlier efforts to clear up the matter. She stated "[s]ince no other correspondence was received from your office, we assumed that the matter was still under investigation."

Shortly thereafter, on February 23, 1988, AMICO filed its complaint in the instant diversity action. AMICO cited Customs' issuance of the demands against United in late July and early August 1987. The complaint claimed that the "[d]efendant, after due demand, has failed to indemnify the plaintiff and has failed to place the plaintiff with funds under the terms of the indemnity agreement." AMICO sought judgment in the amount of the bond, $60,000, as well as attorneys' fees and costs.

On June 15, 1988, counsel for United wrote to Customs, requesting an extension of time for filing a petition for mitigation of the liquidated damages. Counsel stated that he had just recently received the paperwork that had been seized by Customs from Burstrom, and that he was preparing a petition for mitigation. The Detroit District Director responded on June 21, 1988:

> Upon review of several of these case files, we find that all of them were initiated over one year ago and there is no evidence that either principal or surety has made any attempt to resolve any of them.

> Our decision is that the billing cycle that has been initiated will not be interrupted but that any petition that you submit will be answered in a timely manner.

The record indicates that, in early July 1988, Customs sent to AMICO at least sixty-five service bills. These bills totalled $413,577.27. Included were bills corresponding to nearly all the thirty-eight 5955A forms sent to United in July and August of 1987 which are included in the record. The bills were dated June 4, 1988, and said "Third Notice Issued: 7–02–88." The bills all cited United's having violated 19 C.F.R. § 10.39(d)(1) on various dates in March through June of 1987. The bills read "FINAL DEMAND—DELINQUENT ACCOUNT. CLAIM WILL BE RE-

FERRED FOR SANCTIONS AND LEGAL ACTION TEN (10) DAYS FROM THE DATE OF THIS DEMAND."

On September 27, 1988, the Detroit District Director wrote to AMICO, stating "[t]his is a formal demand for payment of liquidated damages incurred by your firm as surety under the terms of numerous Customs bonds. According to our records, the amount due remains unpaid as of this date." Copies of the Customs Forms 5955A at issue were apparently attached, but the attachments do not appear in the record. The letter continued:

> Unless payment in full is received by this office on or before October 17, 1988, appropriate Customs officials in the Detroit District will be notified to refuse acceptance of new bonds written by you as surety and to reexamine whether your current bonds provide the security intended of them. Also, we will be further reviewing the extent and number of payment deficiencies to determine if reasonable grounds exist to believe that your company is not honoring its obligations in other cases. Such circumstances could warrant that the matter be forwarded to Customs Headquarters and the Department of Treasury recommending the withdrawal or revocation of authority to do business as a surety with the United States Government.
>
> We recognize that you may believe satisfactory evidence exists establishing that your failure to [pay is the] result of significant, non-frivolous questions of fact [and law, and] that the requested payment is beyond the scope of the applicable bond. When this is the case, such evidence must be communicated in writing to this office within the time period noted above to preclude immediate action adverse to your company. Should we consider the reasons given for failure to pay to be inadequate, you will be notified and given three business days from the date of notification to tender payment.
>
> . . . .
>
> Absent extraordinary circumstance, once a decision is made to refuse to accept your company's bonds, it will remain in effect for five working days or until your past due accounts are cleared, whichever is later.

AMICO informs us that it paid Customs $60,000 on or about October 3, 1988, apparently in response to the September 27 letter from Customs. This payment was not brought to the attention of the district court for reasons that are unclear.

On October 28, 1988, counsel for United submitted to Customs a petition under 19 C.F.R. § 172.11 (1988) for cancellation or substantial mitigation of the liquidated damages that Customs had demanded. The petition restated United's position that it had complied with Customs regulations and was not liable for liquidated damages.

Meanwhile, AMICO's district court action was still pending. In an Opinion and Order dated November 14, 1988, *American Motorists Insurance Co. v. United Furnace Co.*, 699 F.Supp. 46 (S.D.N.Y.1988), the district court, still unaware of the payment by AMICO to Customs, granted United's Fed. R.Civ.P. 12(b)(6) motion without prejudice, finding the matter was not yet ripe. Accordingly, the district court also denied AMICO's motion for summary judgment.

AMICO appeals, arguing that the district court erred in dismissing the case as not yet ripe. Further, AMICO argues that the district court should have granted its motion for summary judgment. United has moved this Court to dismiss the appeal for lack of subject matter jurisdiction. In response, AMICO argues that United's dismissal motion is untimely, frivolous and intended to harass and delay. AMICO therefore requests that sanctions be imposed against United for its filing of the motion.

## DISCUSSION

A. *Subject Matter Jurisdiction*

■ In the district court, United argued that the court was without subject matter jurisdiction because the United States Court of International Trade has exclusive jurisdiction over this case. The district court implicitly rejected the argument in a footnote. 699 F.Supp. at 48 n. 1. By

means of a motion to dismiss this appeal for lack of subject matter jurisdiction, United raises this argument again here. We deny the motion.

It is apparent that the statutory provisions granting exclusive jurisdiction to the Court of International Trade do not encompass this case. Under 28 U.S.C. § 1581 (1982 & Supp. IV 1986), the Court of International Trade is given exclusive jurisdiction over various "[c]ivil actions against the United States and agencies and officers thereof." Neither the United States nor any agency or officer thereof is a party to this action. Under 28 U.S.C. § 1582 (1982 & Supp. IV 1986), the Court of International Trade is given exclusive jurisdiction over certain "civil action[s] which arise[ ] out of an import transaction and which [are] commenced by the United States." This action has been commenced by AMICO, not by the United States.

United relies primarily on 28 U.S.C. § 1583 (1982), which reads:

In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

This jurisdictional grant has no application to this case. At issue here is a diversity action brought by AMICO against United based on an indemnity agreement enforceable under New York law. AMICO's action simply is not a "counterclaim, cross-claim, or third-party action" in a civil action before the Court of International Trade. *Id.* Indeed, the parties inform us that no action has been filed by the United States in that court seeking liquidated damages. Thus, the plain language of section 1583 makes clear that it does not apply.

Nor are we persuaded by United's citation of *United States v. Mizrahie*, 606 F.Supp. 703 (Ct.Int'l Trade 1985). In that case, the United States brought an action under 28 U.S.C. § 1582(2) against an importer and his surety, seeking liquidated damages for Customs violations. The surety brought cross-claims and a third-party action based on a common law right of indemnification and an indemnification agreement. After noting that, under 28 U.S.C. § 1582, the court had exclusive jurisdiction over the claim brought by the United States, Chief Judge Re held that, under 28 U.S.C. § 1583, the court also had jurisdiction over the cross-claims and third-party action of the surety. *Mizrahie*, 606 F.Supp. at 707.

We find *Mizrahie* distinguishable from this case. In *Mizrahie*, the actions for indemnification brought by the surety were cross-claims and a third-party action. Thus, as Chief Judge Re found, they "f[ell] squarely within section 1583." *Id.* Such is not the case here. Here, the United States has not brought any action under 28 U.S.C. § 1582 for liquidated damages. Were it to bring such an action against United and AMICO in the Court of International Trade, then *Mizrahie* would lend support for that court's exercising jurisdiction over a cross-claim by AMICO against United for indemnification. Nevertheless, AMICO cannot be left waiting without a forum until the opportunity arises to frame its action as a counterclaim, cross-claim or third-party action. AMICO purports to have a state law claim against United that has merit prior to any action being brought by the United States for liquidated damages. AMICO was free to pursue such a claim by filing this diversity action in the district court.

■ Arguing that United's motion to dismiss was untimely, frivolous and motivated by improper purposes, AMICO asks that we impose sanctions against United. With respect to timeliness, we are unpersuaded by AMICO's argument. We must remain alert at all times to questions of subject matter jurisdiction, with or without prompting by the parties. *See, e.g., Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 807 (2d Cir.1971). Therefore, we will not sanction United merely because it raised the issue by motion after already

having filed its appellate brief. Nor do we accept AMICO's characterization of United's motion as frivolous and motivated by the improper purposes of harassment and delay. As applied to this case, we reject United's expansive view of the exclusive jurisdiction of the Court of International Trade and deny the motion to dismiss. Nevertheless, United's pursuit of its position here does not warrant sanctions for frivolousness. Neither do we conclude that the motion was made for the purposes of harassment or delay.

B. *Dismissal of AMICO's Action As Not Yet Ripe*

■ In considering the ripeness of AMICO's action, the district court first looked to see whether AMICO had "establish[ed] a prima facie case for indemnification." 699 F.Supp. at 49. The court's analysis reveals that it was requiring of AMICO one of two showings, either (1) evidence that AMICO had made actual payment to Customs in response to the demands for liquidated damages, or (2) a "basis to establish the amount of any liability, claim, demand, loss, or expense under the terms of the indemnity agreement." *Id.*

With respect to the former, the court found that AMICO had presented no evidence showing actual payment of the demands for liquidated damages. *Id.* In this appeal, AMICO now claims that it paid Customs $60,000 on or about October 3, 1988, but, inexplicably, AMICO never informed the district court of this fact which might have been determinative under the district court's reasoning. Further, the February 11, 1988 letter from Malinowski to Customs suggests that AMICO had made an earlier payment of $60,000. If such a payment was made, and if it related to the dispute at issue here, AMICO never brought it to the district court's attention.

The second factor addressed by the district court was the absence in the record of an adequate basis for establishing an amount of liability. *Id.* The district court focused on the possibility that Customs might find merit in United's petition for cancellation or mitigation of the liquidated damages. As our review of the facts demonstrates, United, as it received demands for liquidated damages, promptly contacted Customs in an effort to clear up what was considered by United to be a misunderstanding caused by incomplete paperwork. Apparently, Customs did not respond to Malinowski's letters. Still, it would appear that United's October 28, 1988 petition is currently being considered by Customs, and it is quite possible that the damages assessed against United and AMICO will be reduced or cancelled. Thus, the district court's characterization of AMICO's claim for indemnification liability in the full amount of the bond to be "speculative," *id.* at 50, has some validity.

From the absence of actual payment and the "speculative" nature of AMICO's ultimate liability on the bond, the district court concluded that the case was not yet ripe because AMICO had not alleged any "injury 'sufficiently real and immediate' so as to warrant adjudication." *Id.* at 50 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982)). In focusing its ripeness inquiry on the absence of actual payment or of a mature and final liability, however, the district court failed to give effect to the intentions of the parties, as manifested in the indemnification agreement viewed in its entirety. In examining the indemnification agreement, the district court, without explanation, apparently gave no weight to the final sentence of Paragraph Two. That sentence reads "Any demand upon [AMICO] by the [United States] shall be sufficient to conclude that a liability exists and [United] shall then place [AMICO] with sufficient funds as collateral security to cover the liability."

We find that this unambiguous sentence gives AMICO a cause of action for collateral security that is ripe for review. By means of this provision, the parties agreed that in the event the United States were to make a "demand" against AMICO, United would be obligated to provide AMICO with collateral security to protect AMICO against the liability threatened by the demand. In this action, AMICO seeks specific performance of this provision of the indemnity agreement. *See Maryland Casu-*

*alty Co. v. Straubinger,* 19 A.D.2d 26, 29–30, 240 N.Y.S.2d 228, 231 (4th Dep't 1963) (per curiam); *National Surety Corp. v. Titan Construction Corp.,* 26 N.Y.S.2d 227, 230–31 (Sup.Ct.N.Y.Cty.), *aff'd,* 260 A.D. 911, 24 N.Y.S.2d 141 (1st Dep't), *motion for reargument or leave to appeal denied,* 260 A.D. 923, 25 N.Y.S.2d 398 (1st Dep't 1940); *see also Safeco Ins. Co. v. Schwab,* 739 F.2d 431, 433–34 (9th Cir. 1984); *Milwaukie Construction Co. v. Glens Falls Ins. Co.,* 367 F.2d 964, 966–67 (9th Cir.1966); *United Bonding Ins. Co. v. Stein,* 273 F.Supp. 929, 929–30 (E.D.Pa. 1967). For the reasons that follow, we believe this claim is ripe.

In failing to recognize AMICO's claim for specific performance of the collateral security provision, the district court focused only on AMICO's claim for an indemnification award.[2] The collateral security AMICO seeks under the final sentence of Paragraph Two is distinguishable from an award of indemnification. Unlike an award of indemnification, which is "the payment of the money to the plaintiff as its property," *see Maryland Casualty,* 19 A.D.2d at 29, 240 N.Y.S.2d at 231, payment by United of collateral security would be held in trust by AMICO while Customs' liquidated damages claims are pending, *see id.,* 19 A.D.2d at 29–30, 240 N.Y.S.2d at 231 (citing *National Surety* ). In the event that the amount of liquidated damages is ultimately reduced or eliminated by Customs, then, as conceded by AMICO at oral argument, United would be entitled to a return of any excessive security it had provided to AMICO. *Cf. Safeco,* 739 F.2d at 432–33 (surety intended to refund payment to indemnitor

if loss did not materialize). There will be no windfall for AMICO.

In *National Surety,* 26 N.Y.S.2d at 228–29, an indemnity agreement provided that it ⌐ ⌐ surety ... shall set up a reserve to cover any claim, suit or judgment under [the] bond, the indemnitors ... will immediately upon demand, deposit with the surety a sum of money equal to such reserve, such sum to be held by the surety as collateral security on [the] bond.

Upon being informed that it *would be* sued by a third party and *expecting* other possible suits, the surety set up a reserve to protect itself against *future* liabilities. The surety then demanded security in the amount of the reserve from the indemnitor. The court held that the surety had stated an equitable claim for specific performance against the indemnitor. The court noted that another provision of the agreement provided for a remedy at law for indemnification after liability had arisen. *Id.* at 230. Where liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision. *Id.* at 230–31; *see also Milwaukie Construction Co.,* 367 F.2d at 966–67; *United Bonding Ins. Co.,* 273 F.Supp. at 929–30; *cf. Commercial Ins. Co. v. Pacific–Peru Construction Corp.,* 558 F.2d 948, 954–55 (9th Cir.1977) (no specific performance of collateral security provision where plaintiff could sue for damages for breach of indemnity agreement).

The agreement in this case is closely analogous to that in *National Surety.* Ad-

---

**2.** The existence in the indemnity agreement of a specific provision for collateral security makes this case distinguishable from *National Union Fire Ins. Co. v. Antony,* No. 87 Civ. 1310 (S.D.N.Y. May 9, 1988) (LEXIS, 1988 U.S.Dist. LEXIS 3905; WESTLAW, 1988 WL 49040), and *Schaffran v. Lefkowitz,* No. 80 Civ. 4603 (S.D.N.Y. Jan. 15, 1981) (LEXIS, Genfed library, 2 Dist file), on which the district court relied. The district court also relied on Judge Sweet's denial of summary judgment on the amount of damages in *Fidelity and Deposit Co. v. Refine Construction Co.,* No. 83 Civ. 6894 (S.D.N.Y. June 27, 1984) (LEXIS, Genfed library, 2 Dist file;

WESTLAW, 1984 WL 536), *modified,* No. 83 Civ. 6894 (S.D.N.Y. Aug. 24, 1984) (LEXIS, Genfed library, 2 Dist file; WESTLAW, 1984 WL 816), in which the indemnity agreement did contain a provision whereby the indemnitor would fund a reserve set up by the surety against future liabilities. Nevertheless, *Fidelity and Deposit Co.* supports our conclusion here. The district court there granted summary judgment for the surety on the issue of liability, referring the case to a magistrate for calculation of, *inter alia,* "the appropriate amount of reserves to be set aside to cover [the surety's] future losses."

mittedly, the case is distinguishable insofar as this agreement does not contain the requirement that AMICO first set up a reserve and only then demand security from United. Nevertheless, the fact that, in bargaining with United, AMICO sought to avoid such a middle step in the process does not alter the validity of the provision these parties negotiated. The intent of the final sentence of Paragraph Two of the indemnity agreement is clear. When a liability became expected because Customs had made a "demand" against AMICO, then AMICO would be entitled to receive from United collateral security. As the *National Surety* Court said:

> If the parties had intended to give security deposited upon the maturity or liquidation of claims, they would have conditioned the defendants' obligation upon such maturity or liquidation, instead of providing, as they did, for the giving of security whenever the plaintiff, in anticipation of possible losses, might set up a reserve to cover them.

26 N.Y.S.2d at 231. Here, the collateral security provision provided that the triggering event would be, not the setting up of a reserve by AMICO, but rather the making of a "demand" by the United States against AMICO. *Cf. Safeco*, 739 F.2d at 434 (finding intent to provide for collateral security after demand made).

Thus, the district court's focusing on Customs' not yet having brought suit against AMICO or subjecting it to "adverse consequences," 699 F.Supp. at 49, fails to appreciate the significance and the scope of the protection AMICO bargained for in the indemnity agreement. In agreeing to act as United's surety, AMICO bargained for a specific provision to protect it from certain impending risks of liability, namely, those risks made apparent by "demands" made by the United States. AMICO insisted that in the event Customs made "demands" upon it, it was to be United that would bear responsibility for providing financial security against the threatened liability. In assessing whether AMICO's cause of action for collateral security is ripe, then, the relevant question is not whether AMICO has actually paid Customs or whether AMICO's liability to Customs is established with finality and certainty. Rather, the relevant question, under this indemnity agreement and these circumstances, is whether the "demands" anticipated in the final sentence of Paragraph Two have been made.

We conclude that the actions taken by Customs were "demands" for liquidated damages within the meaning of Paragraph Two of the indemnification agreement. The Customs regulation United is alleged to have violated states that when a violation occurs, "the district director shall make a demand in writing under the bond for the payment of liquidated damages." 19 C.F.R. § 10.39(d)(1). It is obvious that the parties were aware of this provision, as compliance with it was the very purpose of the bond. The Detroit District Director, citing section 10.39(d)(1), sent to United and, according to AMICO also to it, numerous forms entitled "NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED AND DEMAND FOR PAYMENT." United itself, in the letters to Customs written by Malinowski, referred to the "demands for liquidated damages" that had been received from Customs. When payment of the damages was not forthcoming, Customs sent to AMICO service bills reading "FINAL DEMAND—DELINQUENT ACCOUNT. CLAIM WILL BE REFERRED FOR SANCTIONS AND LEGAL ACTION TEN (10) DAYS FROM THE DATE OF THIS DEMAND." Finally, Customs' September 27, 1988 letter to AMICO read "[t]his is a formal demand for payment of liquidated damages incurred by your firm as surety under the terms of numerous Customs bonds." As shown *supra*, that letter threatened AMICO with various sanctions which threatened AMICO's ability to operate its business.[3]

---

**3.** Although there is nothing in the record before us to so indicate, it appears that Customs has subsequently taken action, under 19 C.F.R. § 113.38 (1988), to sanction AMICO as a "significantly delinquent" surety. *See American Motorists Ins. Co. v. Villanueva*, 706 F.Supp. 923 (Ct.Int'l Trade 1989), *temporary stay until 2/22/89 granted*, No. 89–01–00030 (Ct.Int'l Trade Feb. 17, 1989) (LEXIS, 1989 Ct.Int'l Trade LEXIS 22; WESTLAW, 1989 WL 16073).

Thus, on September 27, 1988, AMICO faced the exact situation it had sought to protect itself against by including the collateral security provision in its indemnity agreement with United. That Customs expressed a willingness to consider defenses United or AMICO might have against the demands does not alter our conclusion that these demands were precisely the kind anticipated by the collateral security provision. Like the surety expecting litigation in *National Surety*, AMICO had specifically bargained to have access to collateral security under the circumstances it faced.

We conclude that by September 27, 1988, if not before, Customs had made demands against AMICO for payment of liquidated damages under United's continuous bond. AMICO's claim was that upon the happening of this event, it was entitled, under the terms of the indemnity agreement, to collateral security from United, and that United breached this agreement. Having bargained for collateral security and having failed to receive it, AMICO's injury is real and immediate. AMICO's claim was at the time of the district court's dismissal and is at present ripe for review, and we reverse the district court's dismissal of the complaint.[4]

## C. *Denial of AMICO's Motion for Summary Judgment*

In granting United's Fed.R.Civ.P. 12(b)(6) motion to dismiss, the district court also denied AMICO's Fed.R.Civ.P. 56 cross-motion for summary judgment. 699 F.Supp. at 51. AMICO appeals from the denial of its motion, arguing that there are no disputed issues of fact and that it is entitled to judgment as a matter of law. AMICO argues that it is entitled to judgment on either of two bases, (1) collateral security or (2) an award of indemnification.

■ Although the denial of AMICO's summary judgment motion was not a final decision of the district court and therefore would not ordinarily be appealable, we have discretion, in the interests of judicial economy, to consider the issue here. *See Barhold v. Rodriguez*, 863 F.2d 233, 237 (2d Cir.1988) (in appeal from grant of motion for summary judgment, court also considers denial of motion for summary judgment); *Placid Oil Co. v. Ashland Oil, Inc.*, 792 F.2d 1127, 1133–34 (Temp.Emer.Ct. App.1986) (in appeal from judgment of dismissal without prejudice, court also considers denial of motion for partial summary judgment).

■ Based on our discussion above, we conclude that AMICO is entitled to partial summary judgment with respect to United's liability under the February 21, 1986 indemnity agreement to provide AMICO with collateral security. United's position has essentially been that the demands made by Customs were not sufficiently final to require payment under the agreement. United has not suggested that the demands made by Customs were not otherwise within the scope of that agreement or that the agreement itself was invalid for any reason. We reject United's finality argument and conclude that because Customs has made demands against AMICO, the indemnity agreement at issue entitles AMICO to some collateral security.

On the other hand, it appears that we do not have before us a comprehensive explanation of all the dealings between these parties. The bond at issue in this case limited liability to $60,000, and AMICO's complaint seeks only that amount. Yet the Customs demands in the record indicate a liability for liquidated damages in excess of $400,000. Indeed, the liability may have been even greater, as the listings of case numbers in the Malinowski letters suggest

---

**4.** In considering the issue of ripeness, we have focused on several events that occurred after the filing of the complaint, including, for example, the September 27, 1988 letter from Customs to AMICO. We note that it is irrelevant whether the case was ripe for review when the complaint was filed. Intervening events relevant to the ripeness inquiry should be considered and may

be determinative. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 139–40, 95 S.Ct. 335, 356–57, 42 L.Ed.2d 320 (1974); *Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir.1986); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532.1 at 136 & n. 39 (1984 & Supp.1988).

that not all the demands made against United appear in the record. The disparity between the amounts of the bond and the damages demanded indicate that other bonds must have been involved, assuming adequate security was provided as required by Customs regulations. *See* 19 C.F.R. § 10.31(f). Indeed, the September 27, 1988 letter from Customs to AMICO demanded "payment of liquidated damages incurred by your firm as surety under the terms of numerous Customs bonds." With "numerous" bonds involved, it is possible that the parties may have had other indemnity agreements between them. It is unclear whether all the Customs demands in the record are subject to the same indemnity agreement before us. We therefore leave to the district court the question of how much collateral security United is obligated to provide under the indemnity agreement at issue in this case.

AMICO further argues that it is entitled to more than collateral security. It claims that the district court erred in not granting it an outright award of indemnification. AMICO argues that the letters of Malinowski should not be considered petitions by United for mitigation or cancellation of the liquidated damages under 19 C.F.R. § 172.11. In support, AMICO points to Customs' letter of June 21, 1988, which stated that United had previously done nothing about the claims against it. Further, AMICO contends that under 19 C.F.R. § 172.2 (1988), Customs was under no obligation to consider the petition filed under 19 C.F.R. § 172.11 by United on October 28, 1988. AMICO asks us to conclude that United has no valid defense to the demands for liquidated damages, and that its liability is therefore sufficiently established to warrant an indemnification award.

Our review of the facts demonstrates that United did not sit idly by in the face of the demands by Customs. Malinowski sent a letter to Customs explaining the situation, and updated this letter twice as more demands were received. It appears that Customs never responded to these letters. Customs' June 21, 1988 statement that United had done nothing about the problem may well be the result of bureaucratic confusion rather than of a reasoned conclusion that Malinowski's letters were legally insufficient to preserve United's rights. Moreover, even if United's October 28, 1988 petition is considered untimely, it nevertheless appears that Customs has accepted the petition and is currently considering whether to reduce or cancel the damages assessed. Under these circumstances, we cannot agree with AMICO's contention that, as a matter of law, United has no defense against the Customs demands. We therefore reject AMICO's argument that it was entitled to summary judgment awarding indemnification outright.

### CONCLUSION

The district court erroneously dismissed AMICO's complaint as not yet ripe. AMICO stated a ripe cause of action for collateral security under the indemnification agreement. Moreover, with respect to its claim for collateral security, AMICO is entitled to summary judgment on the issue of liability. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.