TRAVELERS CASUALTY AND
SURETY COMPANY,
Plaintiff,

v.

Rhys William DALE, Defendant.

No. 06 Civ. 11453(KNF).

United States District Court,
S.D. New York.

March 12, 2008.

## MEMORANDUM AND ORDER

KEVIN NATHANIEL FOX, United States Magistrate Judge.

### INTRODUCTION

The plaintiff, Travelers Casualty and Surety Company ("Travelers"), brought this action against the defendant, Rhys William Dale ("Dale"), for breach of an indemnity agreement. Travelers alleges Dale failed to comply with its demand for collateral security, as provided for in the parties' agreement. Before the Court is the plaintiff's motion for summary judgment, made pursuant to Fed.R.Civ.P. 56. Dale opposes the motion; it is addressed below.

### BACKGROUND[1]

Travelers is a Connecticut corporation licensed to do business in New York as a surety. Among other things, Travelers issues international carrier bonds. *See* 19 C.F.R. § 113.64. Dale is the former president of a defunct international cargo carrier, Great Western Steamship Company ("Great Western"), which was incorporated in Florida.

In February 2004, two international carrier bonds were executed and, thereafter, delivered to the United States Customs Service, to ensure compliance with all regulatory and statutory requirements pertaining to the clearance of vessels into the United States. Great Western is the principal on each bond, and Travelers is the surety. The effective date of each bond is March 24, 2004.

Daniel James McInerney, Jr., Hill, Rivkins and Hayden, New York City, for defendant.

Michael P. O'Connor, Law Offices of Michael P. O'Connor, New York City, for plaintiff.

---

1. Dale failed to comply with Local Civil Rule 56.1(b) of this court, which requires that he submit a short and concise statement, in numbered paragraphs, of material facts as to which he contends a genuine issue to be tried exists. Consequently, the statement of material facts, as to which Travelers contends no genuine issue exists to be tried, is deemed to be admitted by Dale, for the purposes of the instant motion. *See* Local Civil Rule 56.1(c). The facts recited here are, to a great extent, drawn from Traveler's Local Civil Rule 56.1(a) statement.

In December 2003, Dale executed an indemnity agreement with Travelers in his personal capacity. Through that agreement, Dale, his "heirs, legal representatives, successors and assigns . . . are, jointly and severally, bound by the provisions of the [indemnity] agreement." Furthermore, pursuant to the terms and conditions of the indemnity agreement, Dale undertook "to indemnify and save harmless [Travelers] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses . . . incurred by [Travelers] in any action or proceeding . . . which shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, . . ." Travelers maintains that Dale also agreed, by virtue of a collateral security clause within the indemnity agreement, to "place [Travelers] in funds to meet all its liability under any bond, promptly upon request and before [Travelers] may be required to make any payment thereunder."

On April 25 and June 22, 2006, Travelers received formal demands from the United States Bureau of Customs and Border Protection ("CBP") against the bonds executed by Great Western, in a total amount of $51,970. According to CBP, in February 2006, Great Western released to an importer, without CBP authorization, and in violation of CBP regulations, cartons of toys it had transported to the United States. A penalty of $50,970 was imposed by CBP for this infraction. Furthermore, in June 2006, CBP inspected the manifest of the Great Western vessel known as, "Trophy," and found that one case of merchandise on the manifest could not be located. This shortage was violative of customs law, specifically 19 U.S.C. § 1584, and a penalty of $1,000 was assessed by CBP for this misconduct.

The collateral security provision of the parties' indemnity agreement provides, in part, that "[a]ny demand upon [Travelers] by the [United States] shall be sufficient to conclude that a liability exists." Travelers asserts Dale was contractually obliged to place with Travelers, "sufficient funds in a form and amount deemed acceptable in [Travelers'] sole discretion, as collateral security to cover the liability," upon any demand. Travelers requested that Dale post collateral for the penal sums noted above, and for $67,795 in additional CBP assessments, as required by the parties' indemnity agreement; but he refused. The instant action pertains only to demanded collateral security for the $51,970 in penalties referenced above.

For his part, Dale contends that on or about January 17, 2006, several months before CBP imposed penalties on Great Western, and demanded payment from Travelers under the terms of the international carrier bonds it issued, Great Western assigned all its assets to an individual named Michael Phelan ("Phelan"), for the benefit of its creditors. According to Dale, after that assignment, he no longer exercised any control over Great Western. Therefore, Dale contends, any amount due to CBP should be paid by Phelan. In addition, Dale maintains the security Travelers seeks from him is suspect, in that it is "for a liability that is both uncertain in its amount and which it may or may not incur." In support of that argument, Dale submitted to the Court a copy of a petition Phelan submitted to CBP in August 2007, to mitigate the bond-related penalties and liquidated damages in the assessed amount of $50,970, the same amount recited in the April 25, 2006 demand Travelers received from CBP. Dale also questions the amount Travelers seeks to recoup for attorney's fees and costs it allegedly incurred in connection with this action, but maintains the attorney's fees and costs "should be paid as administrative expenses by[Phelan]."

## DISCUSSION

*Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 [1986] ).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. The non-moving party

must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.*, at 256, 106 S. .Ct at 2514. Summary judgment should only be granted if no rational jury could find in favor of the non-moving party. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994).

"[I]n a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996). Under New York law, which governs the instant dispute, "contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nowak*, 81 F.3d at 1192 (citation omitted). However, when the language used in a contract "has a definite and precise meaning, unattended by danger of its misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," no ambiguity exists. *Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091, 1095 (2d Cir.1993) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 [1978] ).

*Collateral Security*

By its express terms, the parties' indemnity agreement provides that "[a]ny demand upon [Travelers] by the [United States] shall be sufficient to conclude that a liability exists and [Dale] shall then place [Travelers] with sufficient funds in a form and amount deemed acceptable in [Travelers'] sole discretion, as collateral security to cover the liability." The Court finds

that this contractual provision is clear and unambiguous. It is almost identical to contract language previously found to be unambiguous by the Second Circuit Court of Appeals. *See Am. Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299–300 (2d Cir.1989).

The record before the Court contains uncontroverted evidence that, in April and June 2006, CBP made demands upon Travelers, based upon international carrier bonds it issued for Great Western, for penalties and liquidated damages totaling $51,970 that CBP had assessed against Great Western, after determining it had violated customs laws and regulations. The record also contains evidence that Travelers advised Dale of the CBP demands, and requested that he post collateral security with Travelers, in accordance with the parties' indemnity agreement, and Dale failed to do so.

█ A collateral security provision in an indemnity agreement, which is clear and unambiguous, such as the one at issue here, that imposes upon an indemnitor, like Dale, an obligation to provide a surety collateral security after the surety has received a demand from the United States, and prior to any actual bond loss, is valid and enforceable. *See Am. Motorists*, 876 F.2d at 299. Here, Dale agreed, in his personal capacity, that in the event the United States made a demand against Travelers, he would provide Travelers with collateral security, sufficient to cover the liability. Dale does not contend he met the obligation that he undertook, when he executed the parties' indemnity agreement, to place sufficient funds with Travelers, under the circumstances described above. Instead, he maintains that an assignment agreement for the benefit of Great Western's creditors, to which he is not a party, relieved him of his contractual obligations to Travelers. Dale is wrong. Nowhere in the text of the assignment

agreement between Great Western and Phelan is the indemnity agreement between Dale and Travelers mentioned. Accordingly, no basis exists for concluding that the parties to the Great Western/Phelan assignment agreement contemplated or agreed that Phelan would assume responsibility for Dale's obligations to Travelers, under the Dale/Travelers indemnity agreement.

As a consequence, Travelers' request for summary judgment would require Dale to perform specifically, under the provision of the parties' indemnity agreement that obligates him to provide Travelers with collateral security, based on CBP's demand for penalties and liquidated damages. The total amount of CBP's demand is $51,970. Based on the record before the Court, summary judgment for Travelers is warranted and is granted.

*Attorney's Fees and Costs*

█ The plaintiff also seeks an additional $8,745.17 from Dale, for fees it incurred for legal services associated with this action. In New York, the general rule is that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 366, 548 N.E.2d 903 (1989). In the case at bar, the parties' indemnification agreement contains a provision through which Dale agreed "[t]o indemnify and save harmless [Travelers] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses included without limitation, fees and disbursements of counsel incurred by [Travelers] in any action or proceeding between [Dale] and [Travelers]," pertinent to the bonds the plaintiff executed for Great Western. It is clear from the above-quot-

ed contract language that Dale intended to waive the benefit of the general rule, to which citation was made above, and promised to compensate Travelers for the attorney's fees, expenses and costs it incurred in any action between Dale and Travelers, related to the international carrier bonds which Travelers executed on behalf of Great Western.

In the instant case, the plaintiff is represented by Michael P. O'Connor, Esq., ("O'Connor"), of the law offices of Michael P. O'Connor, located in New City, New York. Through an affirmation submitted in support of the plaintiff's motion for summary judgment, O'Connor explained that he specializes in and devotes "a substantial part of [his] legal practice to losses concerning the collection and reimbursement [sic] funds to sureties on U.S. Customs Bonds, NVOCC Bonds, Freight Forwarders' Bonds and Indemnity Agreements, in which the sureties have paid funds to U.S. Customs on behalf of bond principals and/or have paid funds to claimants who have received judgments or orders of reparation for payment of their claims on NVOCC Bonds."

O'Connor's affirmation describes various services performed for the plaintiff "under attorney supervision by legal and non-legal personnel in [his] office." In addition, the affirmation informs that the services "rendered by legal personnel in [his] law firm directly attributable to this matter involved approximately 1.70 paralegal hours and 30.75 attorney hours." "Long tradition and just about a universal one in American practice is for the fixation of lawyers' fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyers' experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved." *Matter of Freeman,* 34 N.Y.2d 1, 9, 355 N.Y.S.2d 336, 341, 311 N.E.2d 480 (1974).

The plaintiff's submissions, in support of its request for attorney's fees, fail to identify specifically the legal and non-legal personnel in its counsel's law firm who rendered legal services to it, or to provide information about their respective backgrounds and experiences, and the customary fee(s) charged by those in the legal profession who provide similar legal services. Without this information, it is not possible for the Court to determine the reasonableness of the fees the plaintiff seeks to recoup for the legal services rendered to it by O'Connor's law firm. Consequently, the plaintiff's request for attorney's fees cannot be granted at this juncture in the proceedings. However, the Court will permit the plaintiff to cure the deficiencies noted above, by supplementing its request for attorney's fees promptly, with additional information.

### CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment, (Docket Entry No. 13), is granted. On or before March 19, 2008, the plaintiff shall submit to the Court supplemental data respecting its attorney's fee request, including the identity of each attorney and paralegal at O'Connor's law firm who rendered legal services to the plaintiff, the hours expended by the person, the nature of the work he or she performed, and the person's professional experience and background.

SO ORDERED.