**WESTFIELD INSURANCE COMPANY, Plaintiff,**

v.

**RAINEY CONTRACTING, LLC, et al., Defendants.**

No. 2:15–CV–247

United States District Court, E.D. Tennessee, at Greeneville.

Filed April 13, 2016

Jarrod W. Stone, Jeffrey S. Price, Melissa Jane Hughes, Manier & Herod, Nashville, TN, for Plaintiff.

Jason H. Arthur, Law Office of Jason H. Arthur, Jonesborough, TN, for Defendants.

### ORDER

J. RONNIE GREER, UNITED STATES DISTRICT JUDGE

The plaintiff Westfield Insurance Company ("Westfield") filed a motion for preliminary injunction, [Doc. 38]. Defendants Rainey Contracting, LLC, Rainey, LLC, Skin, LLC, Scott T. Rainey, Stephanie I. Rainey, and Seth L. Kincaid ("defendants"), have responded, [Docs. 51, 52], and the plaintiff has replied, [Docs. 54, 55]. Oral argument was heard on April 8, 2016. The matter is ripe for review.

### I. Background

Westfield issued two performance and payment bonds on behalf of Rainey Contracting, LLC for the construction of two projects in eastern Tennessee. Construction on both projects has been completed and the buildings are in use at this time. All of the defendants entered into an indemnity agreement as part of Westfield's issuance of the surety bonds obligating the defendants jointly and severally. The indemnity agreement required the defendants to exonerate and indemnify Westfield against liability and any losses actually incurred by Westfield because of a breach by Rainey Contracting on construction of the projects. Westfield's indemnity by the defendants is two-fold. The agreement requires the defendants to prevent Westfield from sustaining any liability from losses in the first place and to reimburse Westfield for any losses it actually sustains. Further, the indemnity agreement signed by all defendants obligates the defendants to "deposit with [Westfield], cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to [Westfield] in its sole discretion." This collateral requirement is triggered upon Westfield's demand. None of the defendants dispute that they executed the indemnity agreement or the description of Westfield's rights under the agreement. The defendants submitted detailed financial statements to Westfield before the indemnity agreements were signed and the bonds issued.

Westfield has sustained actual losses of $844,311.99 on the two Rainey construction projects. Kathryn Truman of Westfield submitted an affidavit detailing the actual loss sustained and further averring that Westfield faces additional liability in the amount of $1,022,413.77 under the surety bonds for breach by Rainey Contracting on the construction of the projects. The loss and anticipated liability amounts consist of payments to subcontractors, substitute construction labor and materials, and estimated future liability.

Both the sustained loss and the anticipated liability are losses and liability that the defendants have agreed to fully indemnify Westfield for in the indemnity agreement. Westfield, pursuant to the indemnity agreement, has demanded that that the defendants deposit collateral with Westfield in an amount equal to the sustained loss and anticipated loss. The defendants have submitted updated financial statements to Westfield in order to facilitate the demand for collateral. Thus far, the defendants have deposited no collateral with Westfield. Westfield filed this motion for preliminary injunction asking the Court to enter an order requiring the defendants to deposit collateral in the amount of $1,866,725.76 with Westfield. In oral argument, Westfield asked that this collateral be in the form of cash or cash equivalent, as allowed under the collateral provision of the indemnity agreement.

## II. Standard of Review

The Court must consider four factors in determining whether to grant a preliminary injunction:

(1) whether the plaintiffs have a strong likelihood of success on the merits;

(2) whether, without the injunction, the plaintiffs will suffer irreparable harm;

(3) whether the balance of the equities tips in the movant's favor; and

(4) whether the public interest would be served by the issuance of a preliminary injunction.

*Langley v. Prudential Mortg. Co.*, 554 F.3d 647, 648 (6th Cir.2009). These factors are not prerequisites to the issuance of an injunction but are factors to be balanced in considering whether to grant the injunction. *Id.* Harm that is compensable through monetary damages generally will not justify a preliminary injunction. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir.1992).

## III. Analysis

The plaintiff asks the Court to order the defendants to deposit collateral with Westfield, in the form of cash or cash equivalent, pursuant to the indemnity agreement signed by the defendants. The defendants argue that the Court should deny the preliminary injunction because Westfield does not show that the requirements under the four factor standards are met. First, the defendants argue that Westfield will not suffer irreparable harm without the injunction because they may obtain a money judgment against the defendants and Westfield has a security interest in various personal property of the defendants that can compensate for any injury. Second, the defendants argue that they will suffer substantial harm, namely severe financial problems, if they are required to collateralize over $1.8 million to Westfield. Finally, the defendants suggest that the timing and amount of the collateral demand is inappropriate and that the balance of the equities and public policy support denying the injunction.

From the outset, the defendants rely on *Dunn v. Retail Clerk's International Ass'n, ALF–CIO Local 1529* to argue that granting a preliminary injunction at this time "violates fundamental standards for preliminary injunctive relief" and would amount to adjudication on the merits. *See* 299 F.2d 873 (6th Cir.1962). In *Dunn*, the party applied for a preliminary injunction pending an appeal to the circuit court. *Id.* at 874. The Sixth Circuit declined to issue an injunction pending appeal where the court thought "there [was] sufficient doubt about whether the appellant will ultimately prevail." The holding of *Dunn* does not apply here, however, and it is proper for the Court to consider the four factors to determine whether a preliminary injunction is appropriate.

### a. Likelihood of Success on the Merits

The defendants do not dispute likelihood of Westfield's success on the merits regarding indemnification for payments made under the surety bonds. Given the unambiguous language of the indemnity agreements, it appears to the Court that the plaintiff has a high likelihood of success on the merits of their claim for indemnification. Further, courts have held that these agreements are to be specifically enforced. See Hardeman v. Cnty. Bank v. Stallings, 917 S.W.2d 695, 699 (Tenn.Ct. App.1995). The Court will not address this factor further as it is not in dispute.

### b. Irreparable Harm

■ The plaintiff argues in its motion that it would suffer irreparable harm if the Court were to decline to enter a preliminary injunction because it would be deprived of its bargained-for right to receive collateral pending the resolution of anticipated loss and actual loss sustained. The plaintiff argues that it bargained for the defendants to provide collateral to secure Westfield's anticipated liability and the actual loss sustained for Rainey Contracting's breach of the surety bond. Courts have found that sureties suffer immediate, irreparable harm if they are denied their bargained-for right to collateral. International Fidelity Ins. Co v. Solutions to Every Problem, Inc., No. 3:12–CV–37, 2012 WL 2576775, at *7 (E.D.Tenn. July 3, 2012); Great American Insurance Co. v. SRS, Inc., et al., No. 3:11–CV–970, 2011 WL 6754072, at *8 (M.D.Tenn. Dec. 23, 2011) (citing American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 302 (2d Cir.1989)). The plaintiff argues that it is entitled, as bargained for, to be fully collateralized before it sustains any loss and to be compensated for actual loss sustained. Without a preliminary injunction requiring such collateralization, the plaintiff suffers irreparable harm by being liable for damages where that risk of liability was actually shifted to the defendants through the indemnity agreement.

The defendants argue that Westfield will not suffer irreparable harm because there are other legal remedies that are adequate to compensate them for any loss actually suffered. The defendants argue that any actual loss suffered by Westfield is fully compensable by money damages, which are not difficult to calculate since both projects are completed. This argument is unpersuasive since the defendants bargained for and agreed to collateralize Westfield against anticipated liability on the front-end in addition to reimbursement for actual losses on the back-end. The argument that a money judgment is sufficient ignores the clear provision of the contract as well as the holdings by other courts, discussed above, that sureties suffer immediate, irreparable harm when denied their bargained for collateralization of anticipated liability. Additionally, although construction on the projects is complete, Westfield argues that the total liability cannot yet be calculated.

Westfield has filed a UCC Financial Statement with the Tennessee Secretary of State giving Westfield a perfected security interest in collateral assets of the defendants. According to the defendants, this security interest shows that Westfield is not facing irreparable harm that cannot or will not be properly compensated. The First Circuit held that having a perfected security interest "undermines [the plaintiff's] argument that it is facing an intolerable risk of irreparable harm" and said security interest is "an alternative means for ensuring payment of any judgment that it eventually might obtain." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir.2004). Charlesbank involved the freezing of a company's assets in order to secure even-

tual payment of preferred shares that were bargained for in an investment deal. The defendants' argument is unpersuasive given the fact that, unlike in *Charlesbank,* Westfield has bargained for the right to demand collateralization for anticipated losses and courts have held that refusing such collateralization amounts to irreparable harm to the surety company.

The defendants also argue that Westfield's harm is not unexpected and is actually a self-inflicted dilemma because it is impossible for the defendants to collateralize the demanded amount. According to the defendants, Westfield knew at the time the indemnity agreements were executed that defendants neither individually or jointly, could deposit collateral for an amount anywhere near the amount demanded when the indemnity agreements were entered into. However, the defendants cite no legal authority that enforcing the contract terms, as agreed by all parties, constitutes any sort of bad faith by Westfield or is a defense to granting the requested preliminary injunction. Therefore, the Court finds that Westfield would suffer irreparable harm without the injunction.

### c. Balance of the Equities and Public Policy

The plaintiff argues that the balance of the equities weighs in favor of granting the preliminary injunction because without it, Westfield will be forced to continue to use its own funds to pay for the liability and losses sustained because of Rainey Contracting's alleged breach of the surety bonds, the exact thing that it bargained in the indemnity contracts to prevent. The defendants argue that that issuance of the requested preliminary injunction would cause financial harm to them because it will likely force them into bankruptcy.

The Kincaid defendants[1] make this argument in their "balance of the equities" section and argue that forcing entities or individuals into bankruptcy in an effort to comply with a demand for collateral that Westfield knew would be impossible from the start of the contract is inequitable and harmful. The Rainey defendants[2] argue that forcing the indemnitors into bankruptcy is not supported by public policy. The defendants' responses argue that the defendants, both the individuals and businesses, would likely be forced into bankruptcy. However, only Seth Kincaid submitted an affidavit averring that awarding the requested preliminary injunction "could potentially bankrupt [him] as well [his] related business entities, [Skin, LLC]." No such evidence has been presented regarding the Rainey defendants. In fact, the only evidence presented to the Court regarding financial hardship is that Seth Kincaid and Skin, LLC *may* have to pursue bankruptcy. This evidence is insufficient to show that granting a preliminary injunction that may or could cause financial hardship is inappropriate or against public policy. The defendants have cited no legal authority in their briefs or during oral argument that financial hardship is a defense to granting a preliminary injunction. Other courts have held that enforcing the surety's right to collateral satisfies the equities balance test, even where it may cause financial hardship to the indemnitor. *Great Am. Ins. Co.,* 2011 WL 6754072, at *9 (citing *Int'l Fid. Ins. Co. v. Anchor Envtl., Inc.,* No. CIV.A. 07–04750, 2008 WL 1931004, at *1 (E.D.Pa. May 1, 2008); *Travelers Cas. & Sur. Co. v. Ockerlund,* No. 04 C 3963, 2004 WL 1794915, at *5 (N.D.Ill. Aug. 6, 2004); *Great Am. Ins. Co. v. Conart,* No. 1:05–CV–036 (WLS), 2006 WL 839197, at *9

1. Skin, LLC and Seth L. Kincaid

2. Rainey Contracting, LLC, Rainey, LLC, Scott T. Rainey, and Stephanie I. Rainey

(M.D.Ga. Mar. 29, 2006)). Finally, Tennessee public policy favors enforcing contracts as written. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouts, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975); *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn.2009). Furthermore, courts in this district and the Middle District of Tennessee have acknowledged that public policy favors the solvency of surety companies so that they may provide the necessary bonds for public works projects. *Int'l Fidelity Ins. Co.*, 2012 WL 2576775, at * 9; *Great Am. Ins. Co.*, 2011 WL 6754072, at *6–7 (citing *Anchor Envtl., Inc.*, 2008 WL 1931004, at *7; *Developers Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.*, No. 09–21678–CIV, 2009 WL 3831437, at *2 (S.D.Fla. Nov. 16, 2009)). Therefore, the Court finds that the balance of the equities favors Westfield and granting the injunction would support public policy.

## IV. Conclusion

For the reasons stated above, the plaintiff's motion for preliminary injunction, [Doc. 38], is GRANTED. The defendants Rainey Contracting, LLC, Rainey, LLC, Scott T. Rainey, Stephanie I. Rainey, Skin, LLC, and Seth L. Kincaid shall deposit with Westfield Insurance Company collateral in the amount of 1,866,725.76 in the form of cash or cash equivalent.

So Ordered.