Richard STONE, Plaintiff-Appellant,

v.

CHUNG PEI CHEMICAL INDUSTRY CO. LTD and Taiwan Hi Dap Corporation, Defendants-Appellees.

Docket 86–7001.

United States Court of Appeals, Second Circuit.

Submitted April 14, 1986.

Decided May 5, 1986.

Richard Stone, pro se plaintiff-appellant.

Before MANSFIELD, CARDAMONE and PIERCE, Circuit Judges.

PER CURIAM:

Richard Stone, a resident of New York, filed a *pro se* diversity complaint in the United States District Court for the South-

ern District of New York (Brieant, J.) against two Taiwanese corporations, one of which answered and moved to dismiss on the grounds that it was not subject to the court's jurisdiction and that a contract between plaintiff and it had been cancelled by consent. The other corporation never appeared or answered. The district court dismissed the complaint as frivolous. We reverse and remand.

## I FACTS

The facts alleged in the *pro se* complaint, assumed to be true, reveal that in April 1977 Stone entered into a contract with Chung Pei Chemical Co. Ltd. (Chung Pei). Under its terms, Chung Pei was to produce high gloss wax tiles in Taiwan and Stone was to have the exclusive right to market them in the United States and Canada. Stone stayed in Taiwan for over a year giving technical assistance to Chung Pei, while also making several marketing trips to the United States.

In March 1978 Stone met Mr. Nagase, President of Fuji Polymer, Inc. (Fuji) of Japan, who agreed to assume production and quality control of the tiles that were produced by Chung Pei. Stone and Nagase together acquired Griddan, Ltd., a Hong Kong company, through which all tile sales would be channeled. Stone introduced Mr. Hsieh, president of Chung Pei, to Nagase, and the three discussed cancelling Stone's contract with Chung Pei and entering into a new contract between Chung Pei and Griddan. At this May 1978 meeting, Stone and Hsieh signed an agreement cancelling Stone's contract with Chung Pei, on the understanding that Chung Pei would enter into a contract with Griddan.

Nagase then persuaded Stone that the new contract with Chung Pei should be with Fuji, rather than with Griddan. In return, Stone was to receive advances on various expenses as well as medical and life insurance from Fuji. Nagase also agreed to give Stone a contract providing him with 50 percent of Fuji's profits from the venture with Chung Pei. The contract Stone eventually signed with Fuji was al-

legedly for far less than he had negotiated. After Fuji went bankrupt in the fall of 1983, customers Stone had secured, including two in New York, made agreements directly with Chung Pei.

Stone asserts that the cancellation of his contract with Chung Pei was procured through Nagase's fraud and that his original contract is still valid. Stone also alleges that:

> [due to my] arduous efforts made to implement the title contract with Chung Pei, and because of my work in securing Japanese technical assistance that resulted in Chung Pei's acquiring the know-how to supply a quality tile for the American marketplace, Chung Pei has been unjustly enriched to my great detriment and loss.

The other Taiwanese corporation, Taiwan Hi Dap Corporation, was an affiliate of Fuji until 1983. Nagase was also its president. In August 1978, Stone and Nagase agreed to bring Hi Dap into the tile venture. Stone "introduced" Nagase to a Massachusetts' company which makes automatic machines that apply adhesive and paper to floor tile-backs making them self-adhering. Hi Dap purchased this machine and processed tiles from Chung Pei. Stone alleges that Hi Dap sold these tiles to customers Stone had secured in the United States and to former customers of Fuji. He claims that he has an implied contract with Hi Dap and that Hi Dap has been unjustly enriched.

## II DISCUSSION

Under New York's long-arm statute Stone's complaint sufficiently states a claim to support personal jurisdiction over the two Taiwanese corporations. New York has personal jurisdiction over a nondomiciliary if two conditions are met. First, the nondomiciliary must be one who "transacts any business within the state or contracts anywhere to supply goods or services in the state...." N.Y.Civ.Prac.Law § 302(a)(1) (McKinney Supp.1986). Second, the claim against the nondomiciliary must arise from the business activity forming

the basis for the satisfaction of the first prong. *Beacon Enterprises Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983). Such a nexus between the cause of action and the activity in the forum State satisfies the "minimum contacts" requirements of due process. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–99, 100 S.Ct. 559, 564–68, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 315–21, 66 S.Ct. 154, 157–61, 90 L.Ed. 95 (1945).

█ In a motion to dismiss for lack of personal jurisdiction, where the trial court holds no hearing, "the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). Here, Stone alleged that both Taiwanese corporations are selling floor tiles to New York customers secured by Stone. This fact was not disputed by Chung Pei[1] and Hi Dap did not answer the complaint. Thus, Stone made a prima facie showing of jurisdiction against both defendants.

It hardly need be said, because it is so well-known, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). It follows that when the plaintiff, as here, is proceeding *pro se* the complaint must be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

█ Although the contract between Stone and Chung Pei was cancelled by consent in 1978, a fact relied upon by the district court in dismissing the complaint, the allegations of Stone's complaint relate to matters that occurred subsequent to that time. Stone alleged that he had an implied contract with both Chung Pei and Hi Dap corporations. In its motion to dismiss Chung Pei simply asserted that Stone had not performed any services for it since May 1978, the date the contract between the two parties was cancelled. "In determining whether the district court, pursuant to Rule 12(b)(6), properly dismissed appellant's ... claims, we must view the factual allegations in the complaint as true." *Montauk-Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 94 (2d Cir.1986) (citation omitted). Liberally construing Stone's *pro se* complaint and accepting its allegations as true, he has stated a cause of action against both Taiwanese corporations based on implied contract and unjust enrichment.

Accordingly, the order dismissing plaintiff's complaint is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

1. Chung Pei appeared in the district court, but did not appear on this appeal though it was served with a notice of it.