**AMERICAN MOTORISTS INSURANCE CO., Plaintiff,**

**v.**

**UNITED FURNACE CO., INC., Defendant.**

**No. 88 CIV. 1238 (PKL).**

United States District Court, S.D. New York.

Nov. 14, 1988.

Sherri L. Goldsmith, Russotti & Barrison, New York City, for plaintiff.

Edmund Maciorowski, Detroit, Mich. (Galvin, Haroian & Mlawski, New York City, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

The plaintiff in this diversity action, American Motorists Insurance Company ("American Motorists" or the "insurance company"), is a surety company. Defendant, United Furnace Company, Inc. ("United"), operates a job shop and foundry in Michigan at which it performs a variety of machinery operations, and melts down scrap metal. American Motorists seeks to have United place it in funds, as collateral, to secure it against liability that it alleges it incurred by virtue of the writing of a Continuous Bond. American seeks this recovery under the terms of an indemnity agreement executed by defendant in favor of American Motorists, in connection with the writing of the Bond.

Defendant has moved, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss the complaint. Plaintiff has cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendant's motion is granted. Accordingly, plaintiff's motion for summary judgment is denied.

## I. Background

It is undisputed that plaintiff American Motorists is an Illinois corporation, licensed to do business as a surety in New York, and maintains an office at Two World Trade Center, New York, New York. Defendant United is a Michigan corporation, with offices at 4445 Lawton Avenue, Detroit, Michigan.

In early 1976, United entered into a contract with the Ford Motor Company, whereby United agreed to machine, at its Michigan location, certain engine block castings produced in Ontario, to melt down any resulting waste, and then return the waste and castings to Ford's plant in Ontario. See, Defendant's Memorandum In Support Of Its Motion To Dismiss, ("Defendant's Mem.") p. 2. Articles imported into the Customs territory of the United States are generally subject to duty, unless specifically exempted therefrom. 19 U.S.C. § 1202 (Revised Tariff Schedules). Pursuant to regulations promulgated under the Tariff Schedules, an exemption from duty is provided for in cases where the articles being imported will not remain in the United States for a period of more than one year. To guarantee compliance with the terms of the regulations, a surety bond is required. 19 C.F.R. 10.39. Such a bond is the subject of this action.

American Motorists issued, and United executed and delivered, a $60,000 Continuous Bond. The Bond was issued in the form prescribed by the regulations. See 19 C.F.R. 10.31. Contemporaneously, United executed an indemnity agreement. The relevant language of that agreement states:

> To indemnify and save harmless Company from and against any and all liability, claim, demand, loss, damage; expense, cost and attorneys' fees which it shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, and place Company in funds to meet all its liability under any bonds promptly upon request and before Company may be required to make any payment; and the voucher or other evidence of payment or of the fact and amount of Indemnitor's liability to Company under this agreement shall be prima facie evidence of the fact and amount of said Indemnitor's liability to said Company under this agreement. Any demand upon the Company by the Obligee shall be sufficient to conclude that a liability exists and the Indemnitor shall then place the Company with sufficient funds as collateral security to cover the liability.

Attached as Exhibit B to Plaintiff's Motion for Summary Judgment. During a six month period in 1986, United received, machined and exported the articles that were the subject of its contract with Ford, the Continuous Bond, and the aforesaid agreement.

United engaged the services of a customshouse broker, licensed by the United States Customs Service in accordance with 19 C.F.R. 111.1 *et seq.* of the Customs Regulations, to process the administration and cancellation of the temporary importation bond charges. United contends that it relied on this broker to process and cancel these temporary importation bond charges, and had no information that this had not occurred. Shortly after United engaged the customshouse broker, the broker went into bankruptcy and its records were seized by the Customs Service. Among the records seized were the documents necessary for the cancellation of United's liquidated damages under the bond. *See* Defendant's Mem., pp. 2–3. United then apprised the Customs Service of the situation and petitioned the Customs Service to review these records. *See* Letter of Marjola Malinowski, attached as Exhibit 1 to Defendant's Mem. Subsequently, United obtained a release of copies of its records and an extension of time to supplement its petition for mitigation of the liquidated damages under the bond. *See* Defendant's Mem., p. 3; Department of Treasury letter, dated June 21, 1988, attached thereto as Exhibit 3.

Pursuant to the provisions of 19 C.F.R. 10.39, the Customs Service has the authority to consider various factors and circumstances in a situation where a surety bond of this type has been breached, and may elect to reduce the amount of liquidated damages due.

Beginning in July of 1987, the U.S. Customs Service began to make demands upon defendant, the surety American Motorists, for payment of liquidated damages pursuant to the terms of the bond. However, to date there has been no legal action commenced against either American Motorists or United by the Customs Service.[1] American Motorists has made no payment to the

Customs Service and has incurred no actual expense or loss. Furthermore, the Customs Service has yet to review or act upon United's petition to mitigate, but, as noted above, has indicated that it will entertain such a petition when received.

American Motorists seeks to be placed in funds as collateral for liability under the bond. The insurance company bases this demand upon its argument that, by the terms of the indemnity agreement, the surety may demand that the principal make funds available to the surety to reimburse it for any actual payment to the obligee.

## II. Discussion

On a motion to dismiss, the complaint must be read generously and every favorable inference drawn in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Metzner v. D.H. Blair & Co., Inc.*, 663 F.Supp. 716, 719 (S.D.N.Y.1987). The complaint thus should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir.1986). Indeed, it is the Court's duty "to determine whether the facts set forth justify taking jurisdiction of grounds other than those most artistically pleaded." *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985) (citations omitted).

### The Indemnification Agreement

The existence of the indemnification agreement and the language of the terms contained therein are undisputed. American Motorists contends that the terms of the agreement are meant to provide for indemnity before the surety insurance company has incurred any actual loss or expense. American Motorists argues that

[1]. It should be noted that it is doubtful that this Court would have jurisdiction over such an action. Section 1582 of 28 U.S.C. provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—... (2) to recover upon a bond required by the laws of the United States or by the Secretary of the Treasury." In disposing of the motion herein, it is unnecessary to consider whether the claims asserted in the instant action would be ancillary to such an action in the Court of International Trade, and more properly heard in that tribunal.

the demands made by the Customs Service are sufficient to constitute "liability" under the provisions of the indemnification agreement. To further support its position that a liability has in fact been incurred, American Motorists has submitted a September 27, 1988 letter written by the Customs Service to plaintiff demanding full payment of the unpaid assessments against United by October 17, 1988.[2] American Motorists' allegation that this demand amounts to a "liability" is premised on the language in paragraph 2 of the letter, which states that further bonds issued by the insurance company as a surety will be refused until payment is made.

A surety's right to indemnification for its losses and expenses under a bond has been consistently upheld under New York law. *Fidelity and Deposit Company of Maryland v. Refine Construction Company, Inc.*, No. 83 Civ. 6894 (RWS) (S.D.N.Y. 1984) [available on WESTLAW, 1984 WL 536]; *Continental Casualty Co. v. National Slovak Sokol*, 269 N.Y. 283, 199 N.E. 412 (1936); *Aetna Casualty & Surety Co. v. Fleischman Wine & Liquor Co.*, 269 N.Y. 614, 200 N.E. 23 (1936); *United States Fidelity and Guaranty Company v. Green*, 34 A.D.2d 935, 311 N.Y.S.2d 779 (1st Dept.1970). The indemnification agreement is therefore fully valid on its face.

As noted above, the indemnification agreement between the parties contained a clause whereby defendant agreed to place American Motorists in funds to meet all its liability under the bond "before [American Motorists] may be required to make any payment; and the voucher or other evidence of payment or of the fact and amount of Indemnitor's liability to [American Motorists] ... shall be prima facie evidence of the fact and amount of Indemnitor's said liability." Such clauses are valid under both federal and New York law. *Fidelity and Deposit Company of Maryland v. Refine Construction Company, Inc.*, No. 83 Civ. 6894 (RWS) (S.D.N.Y. 1984) citing *Transamerica Insurance Co.*

*v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968); *Standard Accident Insurance Co. v. Higgins*, 9 Misc.2d 371, 170 N.Y.S.2d 73, 75 (Sup.Ct.1957). Based on the undisputed facts, plaintiff has failed to establish a prima facie case for indemnification, as it has presented no evidence of any actual payment, and further, has presented no basis to establish the amount of any liability, claim, demand, loss, or expense under the terms of the indemnity agreement. *See National Union Fire Insurance Company of Pittsburgh v. Antony*, No. 87 Civ. 1310 (SWK), 1988 U.S.Dist. LEXIS 3905 (S.D.N.Y.1988) [available on WESTLAW, 1988 WL 49040] (prima facie case for indemnification established by plaintiff through showing execution of an indemnity agreement, default on the underlying note, and *actual payment* on the bond); *Fidelity and Deposit Company of Maryland v. Refine Construction*, No. 83 Civ. 6894 (RWS) (S.D.N.Y.1984) (refusal to grant summary judgment on amount of damages absent vouchers or other evidence of actual payment, notwithstanding indemnification agreement provision whereby surety agreed to indemnify principal in advance of principal actually incurring loss).

Plaintiff's allegation that the demands made upon them by the Customs Service constitute a "liability" is largely supported by the aforementioned letter from the Customs Service. That letter demands that plaintiff pay the amount due on the bond or possibly risk refusal of future bonds that they write. In that same letter, however, the Customs Service states that it recognizes that the failure to pay may involve a question of law, and advises plaintiff to communicate any information it has regarding such an issue to the Service. The Service then will consider the matter and make its own determination. Until this decision is made, plaintiff will suffer no adverse consequences of any kind. Thus, plaintiff has not established any actual injury under the agreement at this time.

2. Notwithstanding the October 17 deadline for payment stated in that letter, this deadline has passed, and nothing has been brought to the Court's attention indicating that the situation described herein has changed.

## Ripeness

■ It is well-established that federal judicial power extends only to cases that are sufficiently ripe to warrant adjudication. This determination is rested both on constitutional concepts and on discretionary reasons of policy. U.S. Const., Art. III, § 2; C. Wright, A. Miller & E. Cooper, 13A *Federal Practice and Procedure*, § 3532. To satisfy the requirements of Article III, plaintiff must allege an injury "sufficiently real and immediate" so as to warrant adjudication. *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982), cited in *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 595–96 (2d Cir.1988). The central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed, may not occur at all. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985). No precise test exists to determine the difference between a threatened and conjectural injury, thus each case must be considered on an individual basis. *Alliance of American Insurers*, 854 F.2d at 596 (citations omitted). American Motorists' claim is based upon a series of speculations, including the hypothesis that the Customs Service will either bring suit or subject the Insurance Company to adverse consequences, and that this demand will be for the entire amount of penal damages that the bond is limited to, rather than for a reduced amount. Reliance on such a series of speculative premises indicates that there is no harm sufficiently matured so as to warrant judicial intervention. *See Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975).

American Motorists' failure to adequately allege actual damage under the indemnification agreement is central to the Court's ripeness inquiry. *Cf., Alliance of American Insurers*, 854 F.2d at 596. A judicial determination of liability at this point, before the existence or amount of any actual damages can be ascertained, or any of the defendant's defenses considered, could lead to incongruous results.

This position is in accordance with the decisions of this Court. *Schaffran v. Lefkowitz*, No. 80 Civ. 4603 (CBM) (S.D.N.Y. 1981) involved an agreement whereby the plaintiff agreed to indemnify the defendant "from any and all claims, demands, obligation or [l]iability of whatsoever kind or nature" arising from taxes collected by the plaintiff from the defendant, but subsequently not paid over to the IRS. The Court found that the agreement did not encompass a tax lien on the defendant's property as a form of liability. It was undisputed that the IRS made demands upon the plaintiff for the taxes due, and that these taxes were covered in the indemnification clause. The Court nevertheless found that the demands and the lien filed against the plaintiff were not an ascertained liability, and the plaintiff therefore failed to establish its right to indemnification. Similarly, defendant's demands alleged here do not establish plaintiff's present right to indemnification under the agreement.

Furthermore, the *Schaffran* Court took into account the fact that there was a procedure by which the penalty imposed by the IRS could be disputed, and that until this negotiation process was settled, the ultimate amount of liability could not be determined. This is the same situation as that between American Motorists, United, and the Customs Service: United has the right to petition the Service to reduce the amount of damages (and is, in fact, in the process of doing so) and the Customs Service, under its regulations, may choose to so reduce the amount owed. Until these matters are resolved, plaintiff cannot establish any actual amount of liability incurred, or even the likelihood that the harm complained of will be suffered by plaintiff. This claim therefore, does not warrant adjudication.

## Conclusion

Plaintiff has failed to establish that any liability has been incurred under the terms of the Indemnity Agreement that would mandate defendant's placing plaintiff in funds to save plaintiff harmless from loss. This matter is therefore not ripe for deci-

sion. Accordingly, defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted without prejudice, and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.