**In the Matter of the Application of CBS, INC., Petitioner,**

**and of Neal Pilson and Ted Shaker, Petitioners and Cross–Respondents,**

v.

**James SNYDER, Respondent and Cross Petitioner.**

**In the Matter of the Application of James SNYDER, Third–Party Petitioner,**

v.

**Gene JANKOWSKI, George Veras, Jay Rosenstein, Brent Musburger, Pat O'Brien, Unnamed Employees of CBS, Inc., WRC–TV, Ed Hotaling, Unnamed Employees of WRC–TV and the American Arbitration Association, Third–Party Respondents,**

**American Federation of Television and Radio Artists, Applicant for Intervention.**

**No. 91 Civ. 1222 (WCC).**

United States District Court, S.D. New York.

July 29, 1992.

Douglas P. Jacobs, New York City (Anthony M. Bongiorno, of counsel), for petitioners and third-party respondents, Neal

Pilson, Ted Shaker, Gene Jankowski, George Veras, Jay Rosenstein and Pat O'Brien.

Liddle, O'Connor, Finkelstein & Robinson, New York City (Paul T. Shoemaker, of counsel), for respondent and cross-petitioner and third-party petitioner James Snyder.

Irving Brand, James M. Mills, New York City, for third-party respondents WRC–TV, Ed Hotaling and Unnamed Employees of WRC–TV.

Cohen, Weiss and Simon, New York City (Stanley M. Berman, Thomas N. Ciantra, of counsel), for intervenor American Federation of Television and Radio Artists.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action was commenced in the Supreme Court of the State of New York on January 22, 1991 by petitioners, CBS Inc. ("CBS") and two of its managerial employees, Neal Pilson and Ted Shaker, seeking to stay arbitration proceedings initiated by James "Jimmy the Greek" Snyder pursuant to a collective bargaining agreement between CBS and the American Federation of Television and Radio Artists ("AFTRA"), the AFTRA National Code of Fair Practice for Network Television Broadcasting (the "National Code"). The arbitration arises out of CBS's January, 1988 termination of the employment of Snyder, a well-known football analyst and commentator on CBS's Sunday afternoon pre-game program "The NFL Today." Snyder presently moves the Court, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, to compel Pilson, Shaker, Gene Jankowski, George Veras, Jay Rosenstein, Pat O'Brien, Brent Musburger, unnamed employees of CBS (collectively the "CBS Respondents"),[1] WRC–TV, Ed Hotaling, and unnamed employees of WRC–TV (collectively the "WRC–TV Respondents") to participate in the arbitration, and to compel the American Arbitration Association ("AAA") to enter-

tain that arbitration. The WRC–TV Respondents oppose that motion and move to dismiss the action against them pursuant to Rules 12(b)(2), (4), and/or (6), Fed.R.Civ. P., or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. Rule 56. Both the WRC–TV Respondents and the CBS Respondents move for sanctions pursuant to Rule 11, Fed.R.Civ.P. Also before the Court is AFTRA's motion to intervene in this proceeding pursuant to Rule 24(a)(2), Fed.R.Civ.P.

## BACKGROUND

During an interview conducted on January 15, 1988 by Ed Hotaling, a reporter for WRC–TV, the NBC affiliate in Washington, D.C., Snyder made various remarks concerning the role of black athletes in sports. Snyder's comments were not in connection with his employment. Shortly after the interview was aired, CBS terminated Snyder's employment and issued several statements disassociating itself from his remarks. These statements were read on the air by broadcasters Pat O'Brien and Brent Musburger.

Approximately three years after his termination, in January, 1991, Snyder served an arbitration demand on CBS, various former and present CBS employees, WRC–TV, and Hotaling. In his demand, Snyder asserted a number of tort claims including defamation, business disparagement, injurious falsehood, interference with contractual relations, and interference with economic advantage. He also alleged a breach of contract claim against CBS and Pilson, based on the network's failure to honor its alleged promise to exercise a one-year renewal option on Snyder's employment contract. All of these claims allegedly arose from the interview, CBS's subsequent decision not to renew Snyder's employment contract, and public statements CBS and CBS employees made regarding that decision.

---

1. At all relevant times, Pilson was the President of CBS Sports; Shaker was the Executive Producer of CBS Sports; Jankowski was the Vice-President of the CBS Broadcast Group; Veras was a Producer with CBS Sports; Rosenstein was a Publicist with CBS Sports; O'Brien was a broadcaster with CBS Sports; and Musburger was a broadcaster with CBS Sports and the Managing Editor of "NFL Today." Snyder Petition at ¶¶ 3–9.

Shortly after the arbitration demand was served, on January 22, 1991, CBS, Pilson, and Shaker, petitioned in New York State Supreme Court to stay the arbitration, arguing, *inter alia*, that Snyder had not received permission from AFTRA to pursue his claims,[2] that certain claims were time-barred under New York law, and that Pilson and Shaker were not parties to any arbitration agreement with Snyder. On February 4, 1991, WRC–TV, Ed Hotaling and "unnamed employees" of WRC–TV filed a similar action in New York State Supreme Court. They likewise sought a stay because of Snyder's failure to secure AFTRA's endorsement on the demand and the untimeliness of certain of the claims under New York law. In addition, the WRC–TV Respondents asserted that none of them was a signatory to the National Code or to any other agreement to arbitrate any matter with Snyder; that the alleged conduct for which relief was sought in arbitration was not covered by the National Code; and that Snyder had failed to comply with a condition precedent to arbitration under Paragraph 95 of the National Code, requiring the designation of an arbitrator in the demand. Both special proceedings were removed to this Court.

By letter dated March 7, 1991, the AAA dismissed Snyder's demand for arbitration as against all parties, save CBS, because there was no evidence of an agreement to arbitrate those claims. By letter dated March 27, 1991, Snyder protested the AAA's dismissal as "erroneous and premature." The WRC–TV Respondents thereafter filed a Notice of Voluntary Dismissal pursuant to Fed.R.Civ.P. Rule 41(a)(1), on the ground that the AAA's dismissal had rendered moot their proceeding to stay arbitration.

Following removal to this Court, CBS moved to remand this action to state court pursuant to 28 U.S.C. § 1447(c) on the

ground that Snyder's Notice of Removal was defective. AFTRA moved to intervene, seeking to stay arbitration against its members, Hotaling, Musburger, and O'Brien, and to compel arbitration of the timeliness issue. By Opinion and Order dated April 29, 1991, 762 F.Supp. 71, this Court denied CBS's motion to remand. On May 10, 1991, the Court granted AFTRA's motion to intervene in part, but reserved decision on AFTRA's motion to compel arbitration of the timeliness issue "until such time as this Court considers CBS's motion to stay arbitration." In particular, the Court held that AFTRA's argument in support of a stay of arbitration against individual AFTRA members was moot in light of the AAA's dismissal of Snyder's arbitration demand against them. *CBS Inc. v. Snyder*, 136 F.R.D. 364, 365 n. 1 (S.D.N.Y. 1991).

On April 2, 1992 Snyder filed the instant "Petition, Cross Petition and Motion to Compel Arbitration" directed against Pilson, Shaker, Jankowski, Veras, Rosenstein,[3] O'Brien, Musburger, unnamed employees of CBS, WRC–TV, Hotaling, and unnamed employees of WRC–TV. Snyder argues that Paragraphs 67 and 95 of the National Code afford him a basis for proceeding to arbitration against the CBS Respondents and that Paragraphs 19 and 31 of the AFTRA Code of Fair Practice For Washington Broadcasting (the "Washington Code") require the WRC–TV Respondents to arbitrate his dispute with them. CBS has conceded that it is required to arbitrate and, accordingly, has not been named by Snyder as a cross-respondent.

## DISCUSSION

### AFTRA's Motion to Intervene

AFTRA seeks to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure, which provides that:

On February 21, 1991, at Snyder's request, AFTRA endorsed an arbitration demand against CBS. It has not endorsed demands for arbitration against any of the individuals or WRC–TV.

---

**2.** Paragraph 95 of the National Code provides in relevant part:

(a) AFTRA, the Producer concerned, or (with the written consent of AFTRA endorsed upon the demand for arbitration) the artist concerned, may demand such arbitration in writing, which demand shall include the name of the arbitrator appointed by the party demanding arbitration.

**3.** Rosenstein was not named in Snyder's original demand for arbitration filed with the AAA.

[u]pon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See generally Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Elec. Co.,* 922 F.2d 92, 96 (2d Cir.1990); *United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987).

■ Initially, the Court notes that it is undisputed that AFTRA's application to intervene is timely. As to the next requirement included in Rule 24(a)(2), AFTRA has demonstrated that it has a cognizable interest in the subject matter of this lawsuit. AFTRA is a national labor organization with more than thirty affiliated local unions throughout the United States. Decl. of Helayne Antler at ¶ 4. It is the exclusive collective bargaining representative for more than 67,000 members who work in radio, television and related industries and, as such, the party responsible for the administration of the National and Washington Codes. Certainly, AFTRA has a legally protectible interest in participating in a proceeding, such as this one, which may affect the interpretation and/or enforceability of the arbitration provisions of these Codes. *See CBS Inc. v. Snyder,* 136 F.R.D. at 368; *see also EEOC v. AT & T,* 506 F.2d 735, 741–42 (3d Cir.1974) (union should be permitted to intervene as party defendant to protect its interest in its collective bargaining agreements with AT & T); *Vulcan Society of Westchester County, Inc. v. Fire Dept. of White Plains,* 79 F.R.D. 437, 439–41 (S.D.N.Y.1978) (unions permitted to intervene to protect their collective bargaining agreements and assure adequate hiring and promotion criteria).

Furthermore, AFTRA's interest in administering and enforcing the collective bargaining agreements that it negotiated with the networks may be impaired by an unfavorable disposition of this action. AFTRA argues that the arbitration provisions in those Codes were intended to cover contractual disputes, arising under the relevant Code or an individual employment agreement, between either AFTRA and a signatory employer or between an individual AFTRA member and an employer. This view of the language, it contends, comports with the role of unions under federal labor law—to bargain as exclusive employee representative with the employer over the terms and conditions of employment for the workforce as a whole. Should the Court be persuaded that those provisions contemplate the arbitration of disputes between AFTRA members, the scope of the agreement as AFTRA perceives it would be greatly expanded.

Finally, AFTRA's interest in this case is not adequately represented by the parties already before this Court. The burden on AFTRA of making that showing *"should be treated as minimal."* New England Petroleum Corp. v. Federal Energy Admin.,* 71 F.R.D. 454, 458 (S.D.N.Y.1976) (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)). While the CBS Respondents and the WRC–TV Respondents also argue, in effect, that the National and Washington Codes do not require an individual AFTRA member to arbitrate the claims of another AFTRA member, no party is equipped to assert AFTRA's broad institutional interests as exclusive collective bargaining representative responsible for administering the National and Washington Codes on behalf of over 67,000 members. Unless AFTRA is permitted to intervene, its interest in ensuring that the National and Washington Codes are interpreted correctly will be substantially undermined. The Court accordingly grants AFTRA's motion to intervene as of right pursuant to Rule 24(a)(2), Fed. R.Civ.P.

*Motion to Compel Arbitration*

The Supreme Court has consistently recognized that the FAA "establishes a federal policy favoring arbitration." *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Thus, "'questions of

arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)).

"Application of the presumption, however, is constrained by the fact that the source of any obligation to arbitrate is the contract between the parties: 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *See Chevron U.S.A. Inc. v. Consolidated Edison Co.*, 872 F.2d 534, 537 (2d Cir.1989) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *accord AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964) ("[J]ust as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori*, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all."). Whether a person is bound to arbitrate a grievance is "undeniably an issue for judicial determination." *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418–19.[4]

### 1. Arbitration Against Pilson, Jankowski, and Shaker

Snyder predicates his motion to compel arbitration against Pilson, Jankowski, and Shaker on ¶ 95 of the National Code, which provides in pertinent part:

All disputes and controversies of every kind and nature whatsoever between any Producer and AFTRA or between any Producer and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement (whether overscale or not, and whether at the minimum terms and conditions of this Code or better) in the field covered by this Code as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engagement shall be submitted to arbitration....

There is no dispute that CBS signed the National Code as a "Producer." Likewise it is undisputed that none of the CBS Respondents is a signatory to the National Code.

Snyder contends, however, that arbitration against Pilson, Jankowski, and Shaker is warranted pursuant to ¶ 95 since they are "Producers" and this dispute with an AFTRA member, Snyder, arose out of or in connection with employment contracts covered by the National Code.[5] Snyder's rationale is as follows: (1) Pilson and Jankowski should be deemed "Producers" within the meaning of ¶ 95 of the National Code because of their status as executives or agents of a "Producer;" (2) Shaker should be deemed a "Producer" within the meaning of ¶ 95 because his employment contract with CBS defines his role as "Executive Producer." Snyder's analysis is unpersuasive.

 The issue of whether a non-signatory is bound by an arbitration agreement

---

**4.** Given the disposition of the instant matter, the Court need not address the contentions of AFTRA and the WRC–TV Respondents that Snyder's motion to compel arbitration is not governed by the FAA but, instead, is governed exclusively by Section 301 of the Labor Management Relations Act (the "LMRA"). For the purposes of our analysis, it is sufficient to note that the federal law developed under Section 301 to govern the construction of arbitration clauses in collective bargaining agreements and the role of

the federal courts in enforcing agreements to arbitrate is consistent with the standards developed under the Federal Arbitration Act.

**5.** Paragraph 8 of the Independent Contractor's Agreement between Snyder and CBS provided that the parties "are bound by all of the terms and provisions of the applicable [National Code] or any subsequent collective bargaining agreement covering [Snyder's] services...."

is one of contract interpretation. *See Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960). As the CBS Respondents point out, an analysis of the AFTRA National Code demonstrates that an individual employee of a "Producer" cannot be a "Producer" himself. For example, the National Code contemplates that a "Producer" will be an employer of talent (¶¶ 52, 92) and will produce television programs (¶ 70). A "Producer" also agrees to assume certain obligations that cannot logically be performed by an individual employee—such as making contributions to the AFTRA Health and Retirement Funds (¶ 102) and making deductions for AFTRA membership dues (¶ 96). Since Pilson and Jankowski are simply individual employees of CBS, they are in no position to discharge these obligations.

A "Producer" is also granted certain rights under the National Code which would not rationally be conferred on an individual CBS employee. For example, a "Producer" is given the right to exhibit network programs in supplemental markets (¶ 69(a)) and the right to replay network programs (¶ 73). Logic dictates that only the Company itself, not an individual CBS employee, would be granted such a right. Finally, the "no-strike" provision (¶ 93) and the non-discrimination reporting requirements imposed on a "Producer" (¶ 97) lend further support to the conclusion that an individual employee of CBS is not a "Producer" as that term is used in the National Code.[6]

Snyder's reliance on agency principles in an attempt to compel Pilson and Jankowski to arbitrate pursuant to ¶ 95 of the National Code is misplaced. The CBS Respondents do not dispute that as CBS employees, Pilson and Jankowski were agents of CBS. However, we are aware of no legal principle that an employee-agent is individually bound by an arbitration agreement entered into by his employer-principal. To adopt such a rule in the instant action would produce unreasonable results—any

employee of the three television networks signatory to the National Code, if he was considered an agent of the network for some purposes, would potentially be individually subject to arbitration with any AFTRA member under ¶ 95. Indeed, even where an agent enters into a contract on behalf of a disclosed principal, that agent will not be individually bound unless he expressly agrees. *See, e.g., Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673, 677–78 (2d Cir.1972).

Equally unavailing is Snyder's contention that Shaker is a "Producer" for purposes of the National Code merely because his independent employment agreement with CBS provides that he is to perform services for CBS as the "Executive Producer" for CBS Sports. Shaker's designation in his employment contract as a producer for CBS does not automatically render him a "Producer" as described in the National Code. As was noted above, an analysis of the National Code indicates that an individual employee of a signatory network is not a "Producer" as that term is used in the Code.

2. Arbitration Against Shaker, Veras, O'Brien, and Musburger

▆ Snyder submits that ¶ 67 of the National Code affords a basis for this Court to compel arbitration against Shaker, Veras, O'Brien, and Musburger. Paragraph 67 provides in relevant part:

Standard Clause for Individual Contract Every contract (whether written or oral) between Producers under this Code and any Artist must contain and shall be deemed to contain the following clause: "Notwithstanding any provision in this contract to the contrary, it is specifically understood and agreed by all parties hereto: ... 4. All disputes and controversies of every kind and nature arising out of or in connection with this contract shall be determined by arbitration in ac-

---

**6.** The fact that "Company" and "Producer" are used interchangeably in the National Code (*see* ¶ 83) lends no support to Snyder's argument. On the contrary, the interchangeability of those terms indicates that the "Company," CBS, is also the "Producer," as those terms are used in the National Code.

cordance with the procedure and provisions of the AFTRA Code of Fair Practice for Network Television Broadcasting."

Even if Snyder were correct in stating that Shaker, Veras, O'Brien, and Musburger are "Artists" within the meaning of ¶ 67,[7] his argument that these individuals are committed to arbitrate disputes with him pursuant to that provision must fail. Paragraph 67 does not expand the scope of arbitration under the National Code—by its terms it only requires an AFTRA member to incorporate an agreement to arbitrate contractual disputes with the employer arising under his or her individual employment agreement in accordance with the arbitration provisions of the National Code. The plain language of Paragraph 67 cannot be construed to require arbitration of disputes between anyone other than the parties to the individual employment agreement, i.e., the Producer and the Artist. Nor can Paragraph 95 of the National Code provide Snyder with a basis for proceeding to arbitration against these individuals. Paragraph 95 provides for arbitration of "[a]ll disputes and controversies of every kind and nature whatsoever between any Producer and AFTRA or between any Producer and any member of AFTRA, arising out of or in connection with this Code...." Snyder cannot argue that his is a dispute between an AFTRA member and a Producer—as noted above, none of these individual CBS employees is a "Producer" as that term is used in the National Code.[8]

**3. Arbitration Against the CBS Respondents Under Principles of Contract and Agency Law**

Relying upon securities law cases and third-party beneficiary concepts, Snyder argues that by agreeing to the broad arbitration provision in ¶ 95, CBS evinced an intent to "protect" its non-signatory employees, thereby binding them to the arbitration provisions of the National Code. In support of his position, Snyder cites *Letizia v. Prudential Bache Securities*, 802 F.2d 1185 (9th Cir.1986). That case is inapposite.[9]

The individual registered broker-defendants in *Letizia* were non-signatories to a brokerage agreement between their employer, Prudential Bache, and a customer, which provided, in pertinent part, for the arbitration of any dispute arising out of or relating to the customer's securities account. On a motion to dismiss a securities action brought by the customer against the company and its employees, the court agreed with the employees that Prudential Bache had clearly indicated its intention to protect its employees through its customer agreement. Accordingly, the employees, as third-party beneficiaries to the contract, were entitled to invoke the customer agreement to require the arbitration of the customer's claims against them.

■ Snyder asserts that, like the employer in *Letizia*, CBS has manifested an

---

**7.** Certainly, "Artist" as it is used in the National Code must refer to an AFTRA member—of the above-named persons, however, only O'Brien and Musburger are AFTRA members.

**8.** Furthermore, as to Snyder's claims against O'Brien and Musburger, it is clear that the National Code does not require an individual AFTRA member to arbitrate the claims of another AFTRA member. Paragraph 95 clearly limits the applicability of that section to contractual disputes between either AFTRA and a signatory employer or between an individual AFTRA member and an employer.

**9.** *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir.1989), and *Haviland v. Goldman, Sachs & Co.*, 736 F.Supp. 507 (S.D.N.Y.1990), *aff'd*, 947 F.2d 601 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992), cited by Snyder, are equally inapposite. In

those cases, former employees of brokerage firms were required to arbitrate disputes with their former employer despite the absence of an arbitration agreement between the broker and the firm. However, as Snyder concedes, those brokers, as a condition to registration with the New York Stock Exchange or the National Association of Securities Dealers, had executed a Form U–4. Form U–4 provides that the broker:

> agree[s] to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register....

Not surprisingly, therefore, the courts concluded that the Form U–4 provided a basis for compelling arbitration.

"intent to benefit" individual CBS employees through Paragraph 95 since it agreed in certain of the Respondents' employment contracts to indemnify the employee for acts committed during the course of employment with CBS. This argument misses the mark. There is no reason to believe that in agreeing to indemnify certain of its employees, CBS was also manifesting an intent to benefit and protect those employees through the arbitration provision in Paragraph 95 of the National Code. In any event, since "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352 (1960), Snyder must also show that the CBS Respondents have in some way agreed to be bound by ¶ 95. *See, e.g., Flink v. Carlson*, 856 F.2d 44, 47 (8th Cir.1988) (noting that even if Goldman, Sachs and customer intended to bind broker to arbitration provision in customer agreement, they could not bind him without broker manifesting his agreement in some way). Such a showing has not been made. Indeed, in *Letizia* the third-party beneficiaries were seeking to enforce the agreement, while in the case at bar, Snyder is seeking to bind the putative "beneficiaries" to an arbitration agreement they have never sought to enforce.

In sum, the Court concludes that there is no basis for compelling arbitration of the claims Snyder has asserted against the CBS Respondents.[10]

### 4. Arbitration Against the WRC–TV Respondents

#### a. Personal Jurisdiction over the WRC–TV Respondents

The WRC–TV Respondents urge dismissal of this action pursuant to 12(b)(2), Fed.R.Civ.P., on the ground that the Court lacks *in personam* jurisdiction over them.[11] "In a motion to dismiss for lack of personal jurisdiction, where the trial court holds no hearing, 'the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" *Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir. 1986) (quoting *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). Even upon reviewing third-party petitioner Snyder's allegations in the light most favorable to him, *Painewebber Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 118 (S.D.N.Y.1990), however, it is apparent that the WRC–TV Respondents do not have sufficient contacts with New York State to give this Court personal jurisdiction over them.[12]

Where, as in the case at bar, federal jurisdiction is founded exclusively on diversity of citizenship, the law of the forum

10. In light of the foregoing denial of Snyder's motion to compel arbitration against the CBS Respondents, the Court does not reach Respondents' argument that the present motion is, in effect, one to vacate a final arbitral award and therefore barred by the 90–day limitations period governing such actions.

11. The WRC–TV Respondents also move pursuant to Rule 12(b)(4), Fed.R.Civ.P., to dismiss for insufficiency of process, arguing that Snyder's attempt to join additional parties to this action without serving them with a summons and complaint in accordance with Rule 14(a), Fed.R.Civ.P., was improper. This action, however, was initiated in state court as a special proceeding to stay arbitration pursuant to New York Civil Practice Law & Rules (CPLR) § 7503. Whereas an action is normally commenced by the service of a summons and complaint, a special proceeding is commenced by the service of a notice of petition, petition, and affidavits. *See* CPLR

§§ 402, 403. The notice of motion, petition, and affidavits delivered to the WRC–TV Respondents in the case at bar are the functional equivalent of a summons and complaint and provided ample notice to those Respondents that an action had been initiated against them. In accordance with the general policy of the Federal Rules of Civil Procedure that technical and nonprejudicial defects are to be disregarded, the motion to dismiss under Rule 12(b)(4) is denied. *See* 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1353, at 282 (1990) ("In the case of an objection under Rule 12(b)(4) to the form of the process, the motion will be granted only when the defect is prejudicial to defendant.").

12. It is undisputed that WRC–TV is a Delaware corporation with its principal place of business in Washington, D.C. It is also uncontested that Hotaling resides in Washington, D.C.

state governs whether a federal court has personal jurisdiction over non-domiciliaries. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Accordingly, the Court must determine whether New York's long-arm jurisdictional statute, CPLR § 302, affords a basis for jurisdiction in this case.[13]

Snyder's petition makes no allegation in support of this Court's exercise of personal jurisdiction over the WRC–TV Respondents. In his Reply Memorandum of Law, Snyder does argue, however, that "jurisdiction is properly asserted against Hotaling pursuant to § 302(a)(2) because Snyder has asserted a claim against him for tortious interference with contract. Jurisdiction over WRC, pursuant to § 302(a)(1), is sufficient because WRC supplies services (*e.g.*, television broadcast segments) into the State." Reply Memo. at 26. Snyder's argument is meritless.

Personal jurisdiction over Hotaling cannot be grounded in CPLR § 302(a)(2). "New York courts have given a strict interpretation to § 302(a)(2), requiring, in effect, that the defendant be physically present in New York when committing the tort." *See Lynn v. Cohen*, 359 F.Supp. 565, 568 (S.D.N.Y.1983). *See also Paul v. Premier Electrical Constr. Co.*, 576 F.Supp. 384, 389 (S.D.N.Y.1983); *Longines Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 460, 209 N.E.2d 68, 77, 261 N.Y.S.2d 8, 21, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). In the case at bar, Hotaling is not alleged to have committed any acts in New York giving rise to Snyder's tortious interference with contract claim—the claim against Hotaling is predicated upon his acts in connection with the interview he conducted in Washington, D.C.

Similarly, section 301(a)(1) does not afford a basis for asserting personal jurisdiction over WRC–TV. Under section 301(a)(1) it is not enough to allege that WRC–TV supplies television broadcast segments into New York. Rather, it is Snyder's burden to show that the alleged defamation, tortious interference with the Snyder/CBS contract, and interference with economic advantage arose out of business transacted by WRC–TV in New York, or at least that such claims are closely related to WRC–TV's New York business activities to a degree satisfying § 302(a)(1). *See Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522, 528 (S.D.N.Y.1990); *see also Hermann v. Sharon Hospital, Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dept.1987) (for purposes of personal jurisdiction under CPLR § 302(a)(1), tort must arise out of defendant's transaction of business in New York). Snyder has not met this burden—there is no allegation that the claims against WRC–TV arose out of, or were closely connected to, any business WRC–TV conducted in New York. Indeed, the allegation that WRC–TV supplies any television broadcast segments into New York is unsupported.

Nor can Snyder succeed on his assertion that the WRC–TV Respondents have consented to this Court's jurisdiction over them. Snyder's argument is as follows: WRC–TV is subject to the Washington Code since that Code was executed by NBC on WRC–TV's behalf; Hotaling is covered by the Washington Code since he has an employment contract with NBC or WRC–TV which necessarily designates him as an "Artist" as that term is defined in the Washington Code; Paragraph 19 of the Washington Code, to which the WRC–TV Respondents are subject, provides for the incorporation of the provisions of the National Code; and Paragraph 95 of the National Code provides that all disputes are to be "submitted to arbitration ... under the

---

**13.** The provisions of section 302 relevant to this action provide:

**(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act[.]

Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association...." Finally, relying upon the AAA's Rule 36, Snyder concludes that the WRC–TV Respondents have consented to service of process upon them at any location.

Section 36 of the AAA's rules provides: Each party to a Submission or other agreement that provides for arbitration under these rules shall be deemed to have consented and shall consent that any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules; for any court action in connection therewith; or for the entry of judgment on an award made thereunder may be served upon such party by mail addressed to such party or its attorney at the last known address or by personal service, within or without the state wherein the arbitration is to be held.

Assuming *arguendo* that this rule is intended to confer personal jurisdiction, by its terms it only applies to "each party to a Submission or other agreement that provides for arbitration under these rules." Snyder has no specific agreement to arbitrate with WRC–TV or Hotaling. Rather, he maintains that his claims against the WRC–TV Respondents are arbitrable pursuant to the terms of the Washington Code.[14] Paragraph 31 of the Washington Code provides for arbitration of

[a]ll disputes and controversies of every kind and nature whatsoever between Company or any Producer and AFTRA, or between Company and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement ... in the field covered by this Code as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engagement....

¶ 31.[15]

■ Paragraph 31 cannot be read to provide, as Snyder would have it, that his claims against the WRC–TV Respondents are arbitrable since this "dispute between a Company (WRC) and an AFTRA member (Snyder)" "arose 'out of or in connection' with Hotaling's employment contract, which the Washington Code governs." *See* Snyder Memo. at 14, 29. By its plain language, ¶ 31 applies only to disputes between AFTRA and a signatory employer or between an individual AFTRA member and an employer. It does not contemplate that disputes between individual AFTRA members must be submitted to arbitration. Accordingly, Snyder's attempt to compel arbi-

---

14. Snyder pursues this argument despite the fact that his individual employment contract with CBS provided that the parties were bound by the terms and provisions of the National Code, not the Washington Code. Nor has Snyder made any attempt to rebut the sworn statement of Paul Besson to the effect that at the time of the interview, Hotaling had no independent employment agreement with NBC or WRC–TV and was not covered by the National or Washington Codes. Aff. at ¶ 10.

15. Snyder cannot avoid the limited scope of arbitration under this provision by relying on ¶ 19 of the Washington Code, the standard arbitration clause which must be made a part of every AFTRA member's individual employment agreement. Paragraph 19 provides:

Every contract whether written or oral between the Company under this Code and any artist covered by this Code must contain and shall be deemed to contain the following clause:

"Notwithstanding any provision in this contract to the contrary, it is specifically understood and agreed by all parties hereto:
A. That they are bound by all the terms and provisions of the AFTRA CODE OF FAIR PRACTICE FOR TELEVISION AND RADIO BROADCASTING, local and network....
C. All disputes and controversies of every kind and nature arising out of or in connection with any services performed, covered by the Washington Local AFTRA Code of Fair Practice for Broadcasting, shall be determined by arbitration in accordance with the procedure and provisions of the Washington Local AFTRA Code. This in no way limits the rights of the respective parties to this agreement otherwise."
As is clear from its language, the above-quoted provision only requires an AFTRA member to incorporate an agreement to arbitrate contractual disputes with the employer arising under his or her individual employment agreement in accordance with the arbitration provisions of the Washington Code.

tration against Hotaling pursuant to this provision must fail.

Furthermore, only parties to, or otherwise covered by, the Washington Code could be said to have an agreement to arbitrate pursuant to the terms of that Code. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Even assuming that WRC–TV was a signatory employer to the Washington Code, it is inconceivable that it could have intended that disputes with Snyder, a person admittedly not covered by the Washington Code, would be subjected to arbitration. Because Snyder does not allege that he was a party to any individual agreement requiring arbitration of claims he may have, save his own with CBS, which he does not claim gives him a right to arbitrate against WRC–TV or any AFTRA member, he may not rely on Section 36 of the AAA's rules to argue that the WRC–TV Respondents have consented to *in personam* jurisdiction.

For the above stated reasons, the WRC–TV Respondents' motion to dismiss for lack of personal jurisdiction is granted. The Court therefore need not and does not address the remaining arguments advanced by the WRC–TV Respondents in support of their motion to dismiss, or in the alternative, for summary judgment.[16]

*Rule 11 Sanctions*

The CBS Respondents and the WRC–TV Respondents both move for Rule 11 sanctions against Snyder's attorneys, arguing that Snyder's motion to compel arbitration against Respondents is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

After carefully reviewing the parties' submissions on this issue, the Court concludes that Snyder's motion to compel arbitration is not so objectively unreasonable as to support the imposition of Rule 11

sanctions. *See McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17 (2d Cir.1990). Sanctions must be imposed on the signer of a paper if either (a) the paper is filed for an improper purpose, or (b) the paper is "frivolous." *See Zaldivar v. Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986). The term "frivolous" describes a filing that is both baseless and made without a reasonable and competent inquiry.

Third-party petitioner Snyder's action here is not frivolous nor is it evident that his motion is pursued here for an improper purpose. Rule 11 is not a license for the Court to sanction any action by an attorney or party with which it disagrees. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1268 (2d Cir.1987). Snyder's motion is not so clearly flawed such that the Court could conclude that it was served for any improper purpose such as to harass or to cause unnecessary delay. Accordingly, the motions for sanctions are denied.

## CONCLUSION

For the foregoing reasons, Snyder's motion to compel arbitration is denied. The motion of the WRC–TV Respondents to dismiss for lack of personal jurisdiction is granted.

SO ORDERED.

---

**16.** Nor does the Court reach the argument of intervenor AFTRA that Snyder's motion to compel arbitration against individual AFTRA members must be denied since AFTRA has only endorsed Snyder's demand against CBS.